WARDELL v HINCKA

Docket No. 308243. Submitted June 12, 2012, at Lansing. Decided June
21, 2012, at 9:00 a.m.

Defendant, Joshua Thomas Hincka, petitioned the Presque Isle
Circuit Court to modify the October 29, 2010, parenting-time
order entered following his divorce from plaintiff, Kristine Lee
Wardell. The existing parenting-time order gave the parties joint
legal and physical custody of their daughter, specified a week-on,
week-off parenting-time schedule, and specified where she would
attend school. Hincka moved for a change of custody on the basis
that he had moved to Cheboygan, which increased the length of
the child's commute to school on the weeks she was with him, and
that Wardell's husband had a criminal record. Wardell also moved
for a change of custody, and the Friend of the Court recommended
that primary physical custody be granted to Wardell, with the
parties retaining joint legal custody. After a trial, the court, Donald
J. McLennan, J., denied the respective motions to change custody,
finding that the best-interest factors of MCL 722.23 weighed
equally in favor of the parties and that the only change in
circumstances was Hincka's move to Cheboygan. Hincka appealed.

The Court of Appeals *held*:

1. The Court of Appeals has jurisdiction of an appeal of right
from a final judgment or final order of the circuit court under MCR
7.203(A)(1). Under MCR 7.202(6)(a)(iii), in a domestic relations
action a final order includes a postjudgment order affecting the
custody of a minor. Orders denying a motion for a change of
custody have been treated in practice as appealable by right. An
order regarding the custody of a minor has an effect on and
influences where the child will live. Under MCR 7.202(6)(a)(iii),
final orders include those domestic relations postjudgment orders
that affect the custody of the minor, not just those that result in a
custody change. Contrary to Wardell's argument, Hincka's appeal
of the trial court's order denying his motion to change custody was
appealable by right and the Court of Appeals had jurisdiction over
the case. MCR 7.202(6)(a)(iii) includes orders wherein a motion to
change custody has been denied.

2. Three standards of review apply to child custody cases. The great-weight-of-the-evidence standard applies to all findings of fact, and the trial court's findings will be sustained unless the evidence clearly preponderates in the opposite direction. An abuse-of-discretion standard applies to the trial court's discretionary rulings such as custody decisions. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law. Under MCL 722.27(1)(c), when an established custodial environment exists, a change in custody may only be made upon a showing of clear and convincing evidence that the change is in the child's best interests as set forth in MCL 722.23. The trial court's findings were not against the great weight of the evidence. Of those factors that the Court deemed relevant, only MCL 722.23(b) weighed slightly in Wardell's rather than Hincka's favor. The only substantive changed circumstance was Hincka's move to Cheboygan, which increased the child's commute to school when she was in his custody. The trial court did not abuse its discretion when it concluded that a reduction in commute time did not clearly and convincingly outweigh the benefits of a stable, successful, and unchanging joint-custody relationship.

Affirmed.

PARENT AND CHILD — PARENTING TIME — CHANGES OF PARENTING TIME — APPEALS — JURISDICTION.

The Court of Appeals has jurisdiction of an appeal of right from a final judgment or final order of the circuit court; in a domestic-relations action, a final order includes a postjudgment order affecting the custody of a minor; orders denying a motion for a change of custody include those domestic-relations postjudgment orders that affect the custody of the minor, not just those that result in a custody change; a circuit court's order denying a motion to change custody is appealable by right to the Court of Appeals because it affects the custody of a minor (MCR 7.203[A][1], MCR 7.202[6][a][iii]).

*Denise M. Burke* for Kristine Lee Wardell.

*Patrick, Kwiatkowski & Hesselink, PLLC* (by *Joseph P. Kwiatkowski*), for Joshua T. Hincka.

Before: BECKERING, P.J., and FITZGERALD and STEPHENS, JJ.

PER CURIAM. Defendant, Joshua Thomas Hincka, appeals by right an order denying his motion for a change of custody. We affirm.

### I. FACTS

Defendant and plaintiff, Kristine Lee Wardell, were married on December 31, 2007, and divorced on January 5, 2010. Their consent judgment provided for joint legal and physical custody of their daughter, who was born on July 11, 2006. On October 29, 2010, the trial court entered the parties' most recent parenting order, which gave both parties joint legal and physical custody, specified a week-on, week-off parenting-time schedule, and specified that the child would attend school in Posen, Michigan, which was between plaintiff's home in Alpena and defendant's home in Rogers City.

In April 2011, defendant moved to Cheboygan. He filed a motion for a change of custody, citing a change in circumstances brought about by his move and his discovery that plaintiff's husband had a criminal record. The trial court found sufficient evidence of a change in circumstances and referred the case to the Friend of the Court. Plaintiff filed a countermotion for a change of custody. The Friend of the Court recommended that primary physical custody be granted to plaintiff, with plaintiff and defendant having joint legal custody.

The trial court then conducted a trial. Defendant testified that he had part-time employment and was engaged to and living with Melody Rocco. He testified that he, Rocco, and Rocco's two daughters lived in a three-bedroom home. He further testified that the child had a wonderful relationship with Rocco's youngest daughter, who was the same age. He claimed that he had an excellent and affectionate relationship with the

child, that the two engaged in various activities together, and that he was very engaged in her education. Defendant further testified that plaintiff would not answer the phone, return his calls, or permit him to speak with the child when the child was in plaintiff's custody.

Plaintiff testified that both she and defendant had an excellent relationship with the child. She testified that the child typically had her own room but did not always choose to sleep there. She acknowledged that even though her husband's driver's license had been revoked in 2006 he had driven the child around in the past, but claimed that they had discontinued the practice. She denied drinking around the child and testified that she was currently attending school full-time. She was concerned that defendant would prevent her from seeing the child if he were awarded custody.

On December 30, 2011, the trial court issued an opinion and order denying the parties' respective motions to change custody. It noted that the current custody arrangement appeared to be working, found that the best-interest factors weighed equally in favor of the parties, and found that the only change in circumstances was defendant's move to Cheboygan. While the trial court acknowledged that a 70-minute commute was not ideal, it concluded that it was not "so burdensome to the child as to justify disruption of the most recent parenting time order," which "gives [the child] maximum exposure to both parents" and "allows bonding with siblings as well as her soon-to-be stepsiblings."

## II. JURISDICTION

Plaintiff contends that this Court should dismiss defendant's claim of appeal for lack of jurisdiction

because the trial court's December 30, 2011, opinion and order is not a final order under MCR 7.202(6)(a). We disagree.

Whether this Court has jurisdiction to hear an appeal is an issue that we review de novo. *Wickings v Arctic Enterprises, Inc*, 244 Mich App 125, 132-133; 624 NW2d 197 (2000). MCR 7.203(A)(1) provides that this Court has jurisdiction of an appeal of right from "[a] final judgment or final order of the circuit court . . . as defined in MCR 7.202(6) . . . ." Under MCR 7.202(6)(a)(iii), a "final order" includes, "in a domestic relations action, a postjudgment order affecting the custody of a minor." Resolution of this jurisdictional question, therefore, turns on whether the trial court's December 30, 2011, postjudgment order was an order "affecting the custody of a minor." See MCR 7.202(6)(a)(iii).

Although not addressing the issue in the context of a jurisdictional challenge, this Court has stated that a trial court's order denying a petition for a change of custody is "an order affecting custody." *Rivette v Rose-Molina*, 278 Mich App 327, 328, 333; 750 NW2d 603 (2008). Indeed, this Court has in practice treated orders denying a motion for a change of custody as appealable by right. See, e.g., *Corporan v Henton*, 282 Mich App 599, 600-603; 766 NW2d 903 (2009); *Treutle v Treutle*, 197 Mich App 690, 691-692; 495 NW2d 836 (1992); *Schubring v Schubring*, 190 Mich App 468, 469-470; 476 NW2d 434 (1991); *Sedlar v Sedlar*, 165 Mich App 71, 72-74; 419 NW2d 18 (1987).

Furthermore, applying the principles of court-rule interpretation to MCR 7.202(6)(a)(iii), we conclude that the trial court's December 30, 2011, postjudgment order is an order "affecting the custody of a minor." "Interpretation of a court rule is subject to the same basic principles which govern statutory interpretation."

*St George Greek Orthodox Church of Southgate, Mich v Laupmanis Assoc, PC*, 204 Mich App 278, 282; 514 NW2d 516 (1994). "The mission of a court engaged in statutory construction is to interpret and apply the statute in accordance with the intent of the drafter, which, in the first instance, must be determined from the plain meaning of the language used." *Mahrle v Danke*, 216 Mich App 343, 348; 549 NW2d 56 (1996). To ascertain the plain meaning of a term that is not defined by statute or court rule, as is the case here given that the court rules do not define "affecting," this Court may consult a dictionary to determine the plain meaning of the term. *Id.* at 348-349; *Vodvarka v Grasmeyer*, 259 Mich App 499, 510; 675 NW2d 847 (2003). When consulting a dictionary, this Court should be cognizant of the context in which the term is used. *Vodvarka*, 259 Mich App at 510.

Black's Law Dictionary defines "affect" as "[m]ost generally, to produce an effect on; to influence in some way." Black's Law Dictionary (9th ed), p 65. In a custody dispute, one could argue, as plaintiff does, that if the trial court's order does not change custody, it does not produce an effect on custody and therefore is not appealable of right. However, one could also argue that when making determinations regarding the custody of a minor, a trial court's ruling necessarily has an effect on and influences where the child will live and, therefore, is one affecting the custody of a minor. Furthermore, the context in which the term is used supports the latter interpretation. MCR 7.202(6)(a)(iii) carves out as a final order among postjudgment orders in domestic relations actions those that affect the custody of a minor, not those that "change" the custody of a minor. As this Court's long history of treating orders denying motions to change custody as orders appealable by right demonstrates, a decision regarding the custody of a

minor is of the utmost importance regardless of whether the decision changes the custody situation or keeps it as is. We interpret MCR 7.202(6)(a)(iii) as including orders wherein a motion to change custody has been denied.

Accordingly, this Court has jurisdiction over this appeal under MCR 7.203(A)(1) because the trial court's December 30, 2011, opinion and order is a final order under MCR 7.202(6)(a)(iii).[1]

### III. CHANGE OF CUSTODY

Defendant argues that the trial court abused its discretion by denying his motion for a change of custody because it ignored the great weight of the evidence at trial regarding the best-interest factors, which defendant argues was overwhelmingly in his favor. We do not agree.

Three standards of review apply to child custody cases. *LaFleche v Ybarra*, 242 Mich App 692, 695; 619 NW2d 738 (2000). The great-weight-of-the-evidence standard applies to all findings of fact; under this standard, "the trial court's findings will be sustained unless the evidence clearly preponderates in the opposite direction." *Id.* "An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions." *Id.* Finally, "[a] trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id.* (citation and quotation marks omitted).

When an established custodial environment exists, a change in custody may be made only upon a showing by

---

[1] Even if we were to conclude that the trial court's December 30, 2011, opinion and order is not a final order appealable by right, we would still, in the interest of judicial economy, exercise our discretion to treat defendant's claim of appeal as an application for leave to appeal, grant leave, and address the change-of-custody issue presented. See *In re Investigative Subpoena*, 258 Mich App 507, 508 n 2; 671 NW2d 570 (2003).

clear and convincing evidence that the change is in the child's best interests. MCL 722.27(1)(c). The child's best interests are evaluated under factors set forth in MCL 722.23:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute.

In the instant case, the trial court evaluated the above factors and concluded that factors (h), (i), (k), and (*l*) were not relevant to the dispute; that factors (a), (c), (d), (e), (f), (g), and (j) were equal between plaintiff and defendant; and that factor (b) might weigh slightly in favor of plaintiff rather than defendant. Given these determinations and the fact that the only real changed circumstance since the institution of the prior custody arrangement was defendant's move to Cheboygan, the trial court concluded that no change in custody was warranted.

Contrary to defendant's assertions, the findings of the trial court do not contradict the great weight of the evidence. Both parties submitted testimony regarding their love of the child, the child's affection toward them, and the suitability of their respective homes. Each party also raised valid criticisms of the other party but acknowledged that the other party loved the child and that the child appeared to be thriving.[2] Most importantly, the record shows that the only substantive changed circumstance before the initiation of the instant dispute was defendant's move to Cheboygan, which increased the child's commute time to school

---

[2] Defendant focuses heavily on plaintiff's moral fitness, including her false statement about whether she had consumed alcohol in the prior couple of years and allowing her husband to drive without a license. The trial court found that "neither party has particularly impressed the Court with sound judgment." As the trial court correctly noted, factor (f) evaluates the parties' relative moral fitness only as it relates to how they will function as parents rather than with respect to who is the morally superior adult. *Fletcher v Fletcher*, 447 Mich 871, 887; 526 NW2d 889 (1994). The trial court noted that "[d]uring the period this Court has had jurisdiction over this case, both parties have exhibited moral flaws, but there has never been any showing that either parent currently abuses alcohol or drugs, nor abuses or neglects this child." The trial court's finding that factor (f) was equal between the parties was not against the great weight of the evidence.

from about 20 minutes to roughly 70 minutes. While the child might benefit from a reduced commute time during the weeks she is in defendant's custody, the increased commute time did not affect her performance at school given that plaintiff and defendant testified that she was doing "really good" and "great" in school. Moreover, the testimony at trial established that when the child is with defendant, she wakes up at 6:00 a.m. to go to school and goes to sleep at 8:00 p.m.; these are not abnormal hours for a child. Accordingly, the trial court did not abuse its discretion when it concluded that a 50-minute reduction in commute time does not clearly and convincingly outweigh the benefits of a stable, successful, and unchanging joint-custody relationship.

Affirmed.

BECKERING, P.J., and FITZGERALD and STEPHENS, JJ., concurred.