# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* MARTHA ANN GRIMM, a protected person.

---

MARTHA ANN GRIMM, and ERIC C. GRIMM,

        Appellants,

v

P.W. SERVICES, INC., Successor Conservator of
MARTHA ANN GRIMM, KIRSTEN GRIMM,
TERESA STRATTON, MICHAEL GRIMM,
AND MICHAEL WALSH, Guardian Ad Litem,

        Appellees.

UNPUBLISHED
July 14, 2016

No. 326240; 327012
Muskegon Probate Court
LC No. 11-087628-CA;
        11-087628-GA

---

Before: MURRAY, P.J., and SAWYER and METER, JJ.

PER CURIAM.

In Docket Number 326240, Eric C. Grimm ("Eric") and Martha Ann Grimm ("Martha"), appeal as of right an order granting the petition to sell real estate. In Docket Number 327012, Eric and Martha appeal as of right an order granting the conservator's petition to employ an attorney. We affirm both orders.

## I. STATEMENT OF FACTS[1]

Martha, a widow, suffers from "chronic mental illness" and dementia. Because of her condition, Martha lived at her home in North Muskegon with her daughter[2] Kirsten Grimm

---

[1] We take this opportunity to remind appellants that an appellate brief must contain a statement of all material facts, both favorable and unfavorable, that is presented fairly *without argument or bias*. MCR 7.212(C)(6). Additionally, the statement of facts "must contain, specific page references to the transcript, the pleadings, or other document or paper filed with the trial court." *Id*.

[2] Martha has four adult children; Eric, Kirsten Grimm, Michael Grimm, and Teresa Stratton.

("Kirsten") and Kirsten's boyfriend, Gabriel Smith. At some point, it was alleged that Kirsten and Smith made unapproved withdrawals of Martha's funds. As a result of the allegations of wrong doing and a subsequent fall in her home, Martha moved in with Eric at his home in Roosevelt Park.

Eric, concerned about his mother's financial affairs, petitioned the Muskegon Probate Court to appoint him as Martha's conservator and the trial court subsequently appointed Michael Walsh as the lawyer-guardian ad litem for Martha. Walsh recommended the appointment of Eric, and after a hearing on Eric's petition, the trial court appointed Eric as Martha's conservator.

In September 2014, the interested parties stipulated that the North Muskegon home was to be listed for sale no later than December 31, 2014. Thereafter, Eric, because he was too emotionally invested to provide assistance in Martha's best interest, was subsequently removed as the conservator and the trial court appointed P.W. Services (PWS) as Martha's conservator. PWS received the letters of authority appointing it as conservator eight days before the North Muskegon house was to be listed for sale. Acting quickly, PWS listed the house with Lucille Bulthouse, the real estate agent PWS traditionally used when involved in probate matters, instead of using a listing negotiated by Eric with Vivian Keene. Nevertheless, PWS offered a co-listing with Keene.

Two days after listing the house for sale, PWS received an offer to purchase the North Muskegon home for the listed price, and petitioned the court to approve the sale of the property. Eric objected to the sale of the North Muskegon home, arguing that the house should not be sold because Martha may need to live at the North Muskegon home because Eric planned on selling his home and moving elsewhere. Eric also objected to the sale of the home because the price was too low. The trial court, over Eric's objections, determined that the sale of the house was in the best interest of Martha and entered an order granting PWS's petition to sell the house. Eric then appealed this order to our Court.

Because Eric appealed the order, PWS petitioned the court to employ an attorney to defend the appeal. Eric opposed the conservator's motion to employ an attorney by arguing that PWS should not be allowed to hire an attorney because, according to Eric, MCR 7.219 allows this Court to shift costs and attorney fees in a manner deemed appropriate. Martha also filed a motion in opposition to the petition of PWS to employ an attorney, arguing that she was capable of selecting her own attorney and choosing who she wanted to represent her. Martha also did not want to waste any money on an attorney who she did not select.

At a hearing on the motion, PWS argued that EPIC authorizes the hiring of an attorney to defend actions. The trial court agreed and granted PWS's petition to employ an attorney for purposes of Eric's appeal. The trial court entered an order granting PW's petition and ordered that the Estate of Martha Grimm pay the attorney's fees related to Eric's appeal. Eric and Martha then appealed this order to our Court. This Court then consolidated the two appeals to advance the efficient administration of the appellate process. *In re Martha Ann Grimm*, unpublished order of the Court of Appeals, entered May 14, 2015 (Docket Nos. 326240; 327012).

II. DOCKET NO. 326240

## A. MARTHA'S BEST INTEREST

Eric and Martha first argue that the trial court erred in finding that the sale of the home was in Martha's best interest.[3] A trial court's factual findings are reviewed for clear error. *City of Detroit v Ambassador Bridge Co*, 481 Mich 29, 35; 748 NW2d 221 (2008). A finding is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id*.

Pursuant to MCL 700.5423(3), "[a] conservator shall not sell or otherwise dispose of the protected individual's . . . real property . . . without approval of the court." "The court shall only approve the sale . . . if, after a hearing with notice to interested persons as specified in the Michigan court rules, the court considers evidence of the value of the property and otherwise determines that the sale . . . is in the protected individual's best interest." *Id*.

The trial court's finding that the sale of the home was in Martha's best interest is not clearly erroneous. Evidence was presented that the house was built in the 1940s (if not before then) and that substantial work was needed to make the home habitable. Specifically, testimony was elicited from Larry Rottman, a real estate appraiser, that an additional $8,000 to $10,000 would be required to be spent on repairs to make the home habitable. The repairs required were (1) the windows needed to be replaced (which would have cost "several thousand dollars"), (2) new hardwood floors needed to be installed in one of the bedrooms, (3) a new ceiling fan needed to be added in the bathroom and (4) the rotten window sills needed to be replaced. In addition, water damage in the kitchen needed to be addressed. With regard to the value of the home, Bulthouse and Keene provided PWS with a recommended listing price of $99,900 after inspecting the house together. Rachel Cereska of PWS opined that it was in the best interest of Martha to sell the house to Michael and Cori Fris for $99,900. Therefore, there was competent evidence to support the trial court's factual finding.

Eric and Martha argue that the sale of the home was not in Martha's best interest because the seller's and buyer's agent worked for the same real estate brokerage firm, ReMax Muskegon, which made ReMax Muskegon a dual agent. See MCL 339.2517.[4] While such a dual agency

---

[3] We reject appellees argument that this issue is moot. As a general rule, an appellate court will not decide moot issues. *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief. *Id*. While the house was sold to a third party prior to this appeal, there is still meaningful relief available because Eric and Martha are seeking monetary damages. Specifically, Eric and Martha are seeking $20,000 in damages, the difference between the amount Eric believes the house is worth and the amount the house actually sold for. Thus, the issue is not moot.

[4] Such a dual agency relationship is permissible by statute. When agents from the same real estate brokerage represent different parties in a real estate transaction, the brokerage is considered a disclosed consensual dual agent. MCL 339.2517(7). Importantly, the buyer's and seller's agents are not considered dual agents. MCL 339.2517(8). The real estate agents are,

relationship could be an important factor in determining whether the sale of the home was in Martha's best interest, that fact alone does not render erroneous the trial court's factual finding that the sale of the North Muskegon home was in Martha's best interest. As discussed above, there was ample evidence to support the trial court's factual finding.

## B. PRESUMPTIVELY VOIDABLE SALE

Eric and Martha argue that the sale of the North Muskegon home is presumptively voidable under MCL 700.5421. This argument was not "raised, addressed, and decided by the lower court," and, as such, it is unpreserved for appellate review. *Mouzon v Achievable Visions*, 308 Mich App 415, 419; 864 NW2d 606 (2014). "This Court will generally decline to address unpreserved issues unless a miscarriage of justice will result from a failure to pass on them, . . . the question is one of law and all the facts necessary for its resolution have been presented, or [it is] necessary for a proper determination of the case." *Autodie, LLC v City of Grand Rapids*, 305 Mich App 423, 431; 852 NW2d 650 (2014) (quotation marks and citation omitted). We will address the issue because the necessary facts have been presented, however, our review is limited to plain error affecting substantial rights. *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000). "To avoid forfeiture under the plain-error rule, three requirements must be met: (1) an error must have occurred; (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *Id*.

MCL 700.5421 provides:

 (2) A sale, encumbrance, or other transaction involving the investment or management of estate property is presumed to be affected by a conflict between personal and fiduciary interests if it is entered into by the conservator with any of the following:

(a) The conservator's spouse.

(b) The conservator's descendant, sibling, or parent or the spouse of the conservator's descendant, sibling, or parent.

(c) An agent or attorney of the conservator.

(d) A corporation or other person or enterprise in which the conservator, or a person that owns a significant interest in the conservator, has an interest that might affect the conservator's best judgment.

This transaction is not *presumptively* voidable because the sale of the North Muskegon house was not entered into by PWS and PWS's spouse, descendant, sibling, or parent or the spouse of the conservator's descendant, sibling, or parent. In addition, the sale of the home was not made between PWS and one of its agents or attorneys, or a corporation or enterprise in which PWS had an interest that might affect its best judgment. The transaction was entered into

however, required to inform their clients that the brokerage represents both the buyer and seller. *Id*. Here, PWS consented to dual representation when it signed the listing agreement.

-4-

between PWS and Michael and Cori Fris, neutral third parties not associated in anyway with PWS. Thus, the transaction was not presumptively voidable and no error occurred.

## C. STATUTORILY REQUIRED NOTICE OF AGENCY RELATIONSHIPS

Eric and Martha next argue that Bulthouse and Keene failed to disclose to Martha all types of agency relationships, in violation of MCL 339.2517. Because it is being raised for the first time on appeal, the issue is unpreserved, *Mouzon*, 308 Mich App at 419, and will be reviewed for plain error. *Kern*, 240 Mich App at 336.

MCL 339.2517(1) provides:

A licensee shall disclose to a potential buyer or seller in a real estate transaction all types of agency relationships available and the licensee's duties that each agency relationship creates before the disclosure by the potential buyer or seller to the licensee of any confidential information specific to that potential buyer or seller.

The disclosure required by MCL 339.2517(1) must be in writing and substantially conform to the language in MCL 339.2517(3). MCL 339.2517(3).

Despite Eric and Martha's contention, Bulthouse and Keene were not required to disclose to Martha the types of agency relationships as she was not the seller of the home. The appointment of a conservator vests in the conservator title as trustee to all of the protected individual's property. MCL 700.5419(1). The protected individual's interest in property is not transferable or assignable by the protected individual. MCL 700.5419(2). As such, Martha was not the seller of the home as she was unable to transfer her rights in the home to another party. Rather, PWS, with vested title as trustee, was the seller of the home and PWS, in fact, received a disclosure which substantially conformed to the language in MCL 339.2517(3). Therefore, Eric and Martha are unable to demonstrate plain error.

## D. CONSERVATOR'S DUTY TO INFORM INTERESTED PARTIES

Eric and Martha also contend, for the first time on appeal, that PWS failed to keep informed the interested parties of the sale of the North Muskegon home. This unpreserved claim of error is reviewed for clear error affecting substantial rights. *Veltman v Detroit Edison Co*, 261 Mich App 685, 690; 683 NW2d 707 (2004).

A conservator owes a fiduciary duty to the protected individual and the conservator shall observe the standard of care applicable to a trustee. MCL 700.5416. As it relates to nonroutine transactions, like the sale of real estate, a conservator "must inform [the interested parties] of all material facts . . . which significantly affects the [estate] . . . prior to the transaction taking place." *Matter of Green Charitable Trust*, 172 Mich App 298, 316; 431 NW2d 492 (1988). Stated differently, the interested parties have a right to know of an offer prior to the sale. *Id*. Here, PWS notified Martha and the interested parties of the material facts prior to the transaction taking place. PWS filed a petition to sell the North Muskegon home, indicating that Michael and Cori Fris were to purchase the house for $99,900 in cash with a six percent commission to the realtors. Attached to the petition to sell was the listing agreement, which indicated the material

-5-

facts surrounding the agreement between PWS and Keene and Bulthouse i.e., the amount the house was listed for and the commission of the realtors. Moreover, a hearing was held to determine whether the North Muskegon home should be sold, thus informing the interested parties of an offer prior to the sale of the home. Thus, Martha and the interested parties were notified of the material facts in connection to the sale of the North Muskegon home prior to the transaction taking place.

## E. CONSERVATOR'S DUTY TO OBTAIN BEST POSSIBLE PRICE

In the context of a sale of real estate, a conservator has a duty to obtain the highest price. *Matter of Green Charitable Trust*, 172 Mich App at 316. The trial court found that PWS did not breach its duty to obtain the best possible price. In making this finding, the trial court determined that PWS utilized reasonable judgment and reached the ultimate decision of what the listing price should be based on the information it had before it. Eric and Martha take issue with the trial court's factual finding, asserting that it was clearly erroneous.

"The duty to obtain the best price . . . specifically include[s] consideration of . . . [1] the determination of fair market value, [2] the proper marketing of the property, and [3] the adequacy of the price obtained." *Id.* Determination of the fair market value requires a "sound" appraisal, or in the absence of an appraisal, the conservator may establish value by "testing the market." *Id.* at 317-318. "Testing the market" includes organized efforts that would reasonably take the place of a sound and thorough appraisal. *Id.* at 318.

Here, because the house was to be listed within approximately one week of PWS receiving its letters of authority, it did not have adequate time to perform an independent appraisal. However, PWS adequately tested the market. Again, given the time constraints, PWS recommended that Bulthouse and Keene walk through the house and reach a consensus on the listing price of the house. After walking through the house, Bulthouse informed PWS that the two real estate agents agreed that the house should be listed at $99,900. By establishing an appropriate listing price with two local realtors, PWS utilized organized efforts that reasonably took the place of a sound and thorough appraisal.

Second, PWS properly marketed the house.

> Marketing means taking action to bring the property's availability to the attention of a wide spectrum of potential purchasers. There is no one set method of marketing, rather the cases indicate that all the circumstances surrounding the sale are considered to determine adequacy. . . . [W]hat we are looking for is a reasonably aggressive program which men of prudence and intelligence would have followed. Factors which have been considered include advertisement in appropriate publications, contact with local developers, listing with a local broker, use of "For Sale" signs, showing the property to prospective customers, consultation with local sources on whether the offer price was the best offer obtainable, canvassing for possible purchasers, wide circulation of brochures and taking advantage of events—such as free publicity—to give notice of the sale. [*Id.* at 320-321 (quotation marks and citations omitted).]

-6-

While there is not much record evidence indicating what actions were taken with regard to marketing the property, PWS listed the home with not just one agent, but two. PWS listed the property with Bulthouse, PWS's regular realtor, and with Keene, the realtor of Eric's choice. Furthermore, the fact that an offer was made two days after the listing agreement was signed indicates PWS took action to bring the property's "availability to the attention of a wide spectrum of potential purchasers." *Id*. at 319. All the circumstances surrounding the short amount of time the house was listed on the market indicates that the price included the proper marketing of the property.

The third area considered by PWS was the adequacy of the price obtained. In determining whether the price obtained was adequate, the "range of activities and surrounding circumstances are examined to see if the [conservator] took steps to understand the value and qualities of the property, as well as the nature of the market, and then took appropriate steps to secure the maximum price available." *Id*. at 321.

The conservator, PWS, took steps to understand the value and qualities of the property. Keene provided PWS with a market analysis that recommended a listing price of $95,650. Then, Bulthouse and Keene both walked through the North Muskegon home, which had been uninhabitable since 2012, prior to listing the house for sale and recommended a listing price of $99,900. PWS ultimately accepted Michael and Cori Fris's cash offer of $99,900, securing the listed price of the house. Having considered the fair market value, the proper marketing of the property, and the adequacy of the price obtained, the trial court's factual finding that PWS did not breach the duty to obtain the highest price possible was not clearly erroneous.

## F. GUARDIAN AD LITEM'S DUTY TO PROTECT THE RIGHTS OF THE PROTECTED INDIVIDUAL

Eric and Martha next argue that Walsh, as guardian ad litem, failed to protect the rights of Martha. This issue was not advanced in the trial court, thus it is not properly preserved for review, making review limited to plain error affecting substantial rights. *Kern*, 240 Mich App at 336.

A guardian ad litem has the duty to protect the rights of the protected individual. *Cohen v Home Life Ins Co*, 273 Mich 469, 478; 263 NW2d 857 (1935). Eric and Martha argue that Walsh breached this duty when Walsh began advocating for the sale of the home because it was not in the best interest of Martha. Despite Eric's opinion regarding the sale of the North Muskegon property, Walsh believed it was in Martha's best interest to sell the home, particularly because the home was uninhabitable, unsafe, and a drain on the estate property. Thus, in selling the North Muskegon home, Walsh was trying to protect Martha's estate by reducing the amount of money that was spent on the house and by increasing the cash in her estate. Based on these same facts, the trial court agreed with Walsh that selling the house was in Martha's best interest. Although Eric had a difference of opinion regarding what was in Martha's best interest, Walsh adequately protected the rights of Martha when representing her in the lower court proceedings.

## G. ABANDONED ISSUES

Eric and Martha assert that a conservator has a duty to minimize professional service fees and that the trial court failed to provide "effective oversight." In doing so, they fail to cite to the lower court record or any supporting legal authority for their position. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow." *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998). As a result of Eric and Martha's failure to adequately brief their position, they have abandoned these issues. *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).

## III. DOCKET NO. 327012

### A. APPELLATE JURISDICTION

Before addressing the substance of Eric and Martha's appeal in Docket No. 327012, appellees contend that this Court does not have jurisdiction to hear Eric and Martha's appeal. Whether an appellate court has jurisdiction to hear an appeal is an issue reviewed de novo. *Wardell v Hincka*, 297 Mich App 127, 131; 822 NW2d 278 (2012). This Court has jurisdiction of an appeal of right if the order appealed from is a final order. MCR 7.203(A). An order granting or denying a petition for instructions is considered a final order. MCR 5.801(B)(2)(cc). Here, PWS petitioned the trial court to employ an attorney (although it was not required to, see MCL 700.5423(2)). PWS filed the petition to ensure that PWS could, in fact, hire an attorney to defend Eric and Martha's appeal. Stated differently, PWS petition was essentially a petition for instruction from the trial court. Accordingly, the order is an order granting a petition for instructions, which is appealable as of right. MCR 5.801(B)(2)(cc). We have jurisdiction to hear this appeal.

### B. CONSERVATOR'S ABILITY TO EMPLOY AN ATTORNEY

Eric and Martha argue that the trial court impermissibly shifted costs and attorney fees of the appeal to Martha before the appeal was resolved when it granted PWS petition to employ an attorney. Issues of statutory interpretation are a question of law that is reviewed de novo. *In re Complaint of Rovas Against SBC Michigan*, 482 Mich 90, 102; 754 NW2d 259 (2008).

In the instant case, the trial court was not shifting fees pursuant to MCR 7.219. Rather, the trial court was approving PWS's request to employ an attorney to defend Eric and Martha's appeal. Under MCL 700.5423, a conservator may employ an attorney for the benefit of a conservator. Specifically, MCL 700.5423(2) provides:

> (2) Acting reasonably in an effort to accomplish the purpose of the appointment and without court authorization or confirmation, a conservator may do any of the following:
>
> * * *
>
> (z) Employ an attorney to perform necessary legal services or to advise or assist the conservator in the performance of the conservator's administrative duties, even

if the attorney is associated with the conservator, and act without independent investigation upon the attorney's recommendation. An attorney employed under this subdivision shall receive reasonable compensation for his or her employment.

(aa) Prosecute or defend an action, claim, or proceeding in any jurisdiction for the protection of estate property and of the conservator in the performance of a fiduciary duty. [MCL 700.5423(2).]

Here, the trial court provided instruction that PWS could hire an attorney to defend Eric's appeal because defending the appeal was a necessary legal service. Thus, the trial court had the authority to authorize the employment of a lawyer to be paid reasonable compensation.

## C. REPLY BRIEF

Finally, Eric and Martha's arguments that (1) we should refer the trial judge to the judicial tenure commission and (2) Walsh's appointment as guardian ad litem was invalid are not properly before this Court. Eric and Martha first raised these issues in their reply brief. Reply briefs must be limited to rebuttal of the arguments in the appellees' brief. MCR 7.212(G); See also *Kinder Morgan Michigan v City of Jackson*, 277 Mich App 159, 174; 744 NW2d 184 (2007). Raising an issue for the first time in a reply brief is not typically sufficient to present the issue for appeal. *Bronson Methodist Hosp v Michigan Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012).

We affirm the orders in both docket numbers. Appellees may tax costs, having prevailed in full. MCR 7.219(A).

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Patrick M. Meter

-9-