*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHRISTOPHER K. CORNELIUS,

        Plaintiff/Counterdefendant-Appellee,

v

CASEY E. HARHOLD, formerly known as CASEY
E. CORNELIUS,

        Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
September 12, 2024

No. 368646
Oakland Circuit Court
Family Division
LC No. 2015-828579-DM

Before: MARKEY, P.J., and BORRELLO and GARRETT, JJ.

PER CURIAM.

Christopher Cornelius and Casey Harhold were divorced following a brief marriage. The parties' post-divorce custody and support battles have endured far longer. Following allegations of child sexual abuse, child protective proceedings also ran parallel to the family court matter, but were ultimately dismissed. Harhold now appeals the trial court's postjudgment orders denying her request for attorney fees, dividing the costs of a guardian ad-litem (GAL) and family therapist, and allegedly delegating the court's judicial authority to a family therapist to determine when Cornelius should again be awarded unsupervised parenting time. We discern no error and affirm.

## I. BACKGROUND

The parties entered into a consent judgment of divorce after a brief marriage, which provided for shared custody of their two young children. The parties began filing motions regarding child support and parenting time almost immediately after the judgment was entered. Within two years, the parties began a new custody battle. Allegations arose that Cornelius sexually abused one of the children. Cornelius's parenting time was suspended from October 2019 through April 2020, during the Child Protective Services investigation. The child protective proceedings were later dismissed. Given the child abuse allegations and Cornelius's claims against Harhold of parental alienation, the court appointed a GAL in the summer of 2020 to protect the children's interests. The court ordered the parties to equally share the cost of the GAL, who charged $300 an hour. The court granted the GAL authority to reallocate her costs between the parties, but provided no guidance on that issue.

Following the dismissal of the child protective proceedings, Cornelius moved to reinstate his parenting time and was granted supervised parenting time with no overnights. Supervised visits were initially conducted through community organizations, but were later moved to a therapeutic setting to ease the children's transition. The court ordered Cornelius to bear the full cost of all supervised parenting-time sessions. Cornelius continued to seek full parenting-time rights. He also sought to order Harhold's compliance and cooperation with parenting-time orders and to refer the case to the Friend of the Court (FOC) for a full investigation of custody and parenting-time issues. Cornelius eventually moved to change the children's individual therapists based on the therapy practice's alleged improper conduct during the child protective proceedings and subsequent refusal to communicate with him. Both parties sought attorney fees. A flurry of additional motions followed, leading to more than 25 days of hearings.

The trial court eventually ordered the children to begin treatment with new therapists. The court also ordered the parties to engage in family therapy with the children, as well as individual therapy. The family therapist was directed to make recommendations to the GAL who, in turn, would file a report with the court. Once the family therapist determined it was warranted, Cornelius would be awarded regular parenting-time and therapeutic parenting time would end. In an order dated October 6, 2023, the court ruled the parties would share the cost of the family therapist consistent with the uninsured medical costs provision of the child support order: Cornelius would be responsible for 75% of the cost and Harhold 25%. Harhold admits in her appellate brief that Cornelius has covered 100% of this service, but asserted at oral argument that Cornelius is seeking reimbursement from Harhold.

To resolve the majority of the issues raised in the plethora of competing motions, the court issued a 173-page opinion on September 29, 2023. Relevant to the issues in this appeal, the court denied Harhold's request for attorney fees based on financial need. The court noted Harhold had a master's degree and was working toward a doctorate. The court found Harhold failed to establish that Cornelius could better afford these fees. Harhold subsequently sought reconsideration of the denial of her request for attorney fees, as well as the apportionment of GAL and family therapy costs. The trial court denied her motion.

On appeal, Harhold contends that she should not be required to share the costs of the GAL or family therapy because these services were required as a result of Cornelius's behavior. She contends the court should have reviewed existing evidence regarding Cornelius's finances and ordered Cornelius to share her attorney fees. And Harhold challenges the court shifting its duty onto the family therapist to determine whether unsupervised parenting time would be in the children's best interests. However, Harhold does not challenge the ultimate child custody and parenting-time rulings.

## II. ATTORNEY FEES

Harhold contends the trial court erred by denying her request for attorney fees. Requests for attorney fees in child custody disputes are governed by court rule. *Diez v Davey*, 307 Mich App 366, 395; 861 NW2d 323 (2014). MCR 3.206(D)(1) grants parties the right to request attorney fees in a child custody action. MCR 3.206(D)(2)(a) requires the requesting party to "allege facts sufficient to" establish he or she "is unable to bear the expense of the action, including

the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay[.]"

We review for an abuse of discretion a trial court's decision to award attorney fees, for clear error any challenges to the court's factual findings, and de novo any issues of law. *Diez*, 307 Mich App at 395. "[A]n abuse of discretion occurs where the result lies outside of the range of reasonable and principled outcomes." *Kostreva v Kostreva*, 337 Mich App 648, 673; 976 NW2d 889 (2021). "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Elahham v Al-Jabban*, 319 Mich App 112, 120-121; 899 NW2d 768 (2017) (quotation marks and citation omitted).

This Court has interpreted MCR 3.206(D)(2)(a) "to require an award of attorney fees to the extent necessary to enable a party to prosecute or defend a suit." *Diez*, 307 Mich App at 396 (quotation marks and citation omitted). The court rule is based on the well-settled principle "that a party should not be required to invade assets to satisfy attorney fees when the party is relying on the same assets for support." *Gates v Gates*, 256 Mich App 420, 438; 664 NW2d 231 (2003). One party cannot be required to pay the other's attorney fees if he or she is equally or less able to pay, however. MCR 3.206(D)(2)(a). Accordingly, the court must consider and compare both parties' incomes and assets. See *Smith v Smith*, 278 Mich App 198, 207-208; 748 NW2d 258 (2008). See also *Hanaway v Hanaway*, 208 Mich App 278, 299; 527 NW2d 792 (1995) ("Of course, if the court's award of alimony and property on remand leaves the parties with assets and income comparable to one another, an award of fees would be inappropriate."). The requesting party bears the burden "of showing facts sufficient to justify the award." *Safdar v Aziz*, 327 Mich App 252, 268; 933 NW2d 708 (2019) (quotations marks and citation omitted).

The trial court clarified in its order denying reconsideration that its decision was based on the lack of evidence that Harhold could not bear the expense of the action or that Cornelius could. Harhold testified that her attorney fees exceeded three years of her annual income. Although a party may establish an inability to pay attorney fees if his or her annual income is less than the amount of attorney fees owed, it is not the only consideration. *Id*. A trial court must base its decision to award attorney fees on all the facts and circumstances. *Id*. Here, Harhold holds a master's degree and had completed 30 credits toward her doctorate degree. Harhold earned approximately $15,000 annually as a part-time lecturer at Eastern Michigan University, $100 daily as a reading interventionalist at Trenton Public Schools, and $10,000 annually as a part-time driver's education instructor. Harhold agreed she earned between $40,000 and $50,000 annually. Harhold presented no evidence regarding her assets or debts.

Harhold claimed Cornelius could better afford the cost of litigating the action because he had significant assets. She mostly relied on evidence of Cornelius's income and assets at the time the consent judgment was entered in 2016. At that time, Cornelius's annual income was $125,000, and Harhold's was $35,000. Cornelius's employment changed not long after the divorce, however, leading to a series of motions to modify child support. Record evidence demonstrated that in 2019, Cornelius supported himself and paid his child support obligation by cashing out investments and working part-time for $18 an hour. The motions in question, however, were filed between 2020 and 2023.

In 2020, Cornelius sold his home in Royal Oak for $215,000 and purchased a home closer to the children in Grosse Ile for approximately $450,000. He secured a loan from his parents to cover the difference. Harhold claimed Cornelius had an annual income of $88,000 during the relevant time period. At the February 4, 2022 hearing, Harhold answered in the positive when asked by her own counsel if she remembered Cornelius testifying that he earned between $80,000 and $88,000 annually. We were unable to locate any supporting evidence or testimony from Cornelius in the record. Cornelius instead testified he no longer had the assets he had at the time of the consent judgment. Currently, Cornelius had only an IRA, a 401(k), and debt on his house. Cornelius also testified about the costs associated with supervised parenting time, defending himself in the child protective proceeding, and fighting for his parental rights in the current matter. Cornelius believed he had paid between $75,000 and $85,000 in attorney fees as of August 9, 2021.

Ultimately, the court had no evidence regarding Cornelius's income after 2019. The court could conclude based on the testimony that Cornelius had $215,000 in equity in his Grosse Ile property, but owed approximately $250,000 to his parents. Cornelius had also paid 100% of the costs associated with supervised parenting time, 50% of the GAL's costs, and at least 75% of the family therapy costs. Based on the outdated evidence available in the record, we cannot conclude the court clearly erred in its factual findings or abused its discretion in denying Harhold's motion to shift the costs of her attorney fees onto Cornelius.

## III. GAL AND FAMILY THERAPIST FEES

Harhold also challenges the trial court's order requiring her to share the cost of the GAL and family therapist.

The trial court did not make any factual findings connected to its order dividing the GAL costs. Instead, the court exercised its discretion to order the appointment of a GAL and the equal division of the cost for this service. The trial court entered the order appointing the GAL and dividing the costs on June 26, 2020. On appeal, Harhold contends that the trial court should have ordered Cornelius to pay the entirety of the GAL costs because he was better able to bear the financial burden and because his conduct required the GAL's appointment in the first place. As noted above, Harhold failed to present current evidence regarding Cornelius's finances. Accordingly, she cannot support her challenge on disparate-income grounds. The trial court also acted within its discretion in determining both parties had responsibility for the incurrence of this cost. The court gave the GAL authority to reallocate payment of her fees, but she never exercised that option. This suggests the GAL did not find Cornelius solely responsible for the necessity of her services. Indeed, there is record evidence that Harhold took actions to increase the strife in this situation as well.[1] The trial court acted within its discretion in this regard.

---

[1] Harhold filmed parenting-time exchanges despite insisting that Cornelius stop doing the same, and recorded a Zoom parenting-time session in violation of a court order. The children's individual therapists expressed concern about the veracity of the children's abuse allegations. And Harhold

-4-

In her appellate brief, Harhold appears to contend the family therapist's fees "are an offshoot" of child support and should be allocated as such. But they already were. At oral argument, counsel clarified that Harhold requests Cornelius bear the entire burden of the family therapy costs (as well as the children's individual therapy costs) because Cornelius insisted on changing the children's therapists to a provider who did not accept their insurance. The court rejected Harhold's claims that Cornelius was completely at fault for the children and family requiring therapy. Although the court did order the children to treat with different providers, there is no record evidence that Cornelius was given free rein to select the new provider. Ultimately, these are medical costs and the parties' burdens are governed by the uninsured medical costs provision of the child support award. If Harhold desires an order reducing this financial burden, she must file a motion to modify the child support award. This would result in a new assessment of the parties' income and assets. At this time, however, we cannot grant Harhold relief.

IV. DELEGATING JUDICIAL AUTHORITY

Harhold contends the trial court erred by delegating its judicial authority to the family therapist to determine when Cornelius should be awarded unsupervised parenting time. Cornelius contends this Court lacks jurisdiction to consider this issue because the ruling was not a final order appealable as of right under the court rules.

"Whether this Court has jurisdiction to hear an appeal is always within the scope of this Court's review." *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820 (2009). We review de novo jurisdictional questions, *Wardell v Hincka*, 297 Mich App 127, 131; 822 NW2d 278 (2012), and issues of court rule interpretation. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

This Court has jurisdiction over an appeal of right from a final judgment or final order of the circuit court. MCR 7.203(A)(1). With regard to domestic relations actions, MCR 7.202(6)(a)(iii) provides that a final judgment or order means "a postjudgment order that, as to a minor, grants, or denies a motion to change legal custody, physical custody, or domicile[.]" MCR 7.202(6)(a)(iii) specifically pertains to a postjudgment order that grants or denies a motion to change legal or physical custody or domicile.

The motion that led to the order giving rise to this appeal requested a full FOC investigation on child custody and parenting-time issues. The trial court referred the matter to the FOC for an investigation and report as to child custody after finding Cornelius established proper cause or a change of circumstances. The FOC reviewed the best interests of the children and recommended that the parties maintain joint legal custody. The trial court adopted that recommendation. The trial court's postjudgment order denied Cornelius's motion to change legal custody, which affords this Court jurisdiction in an appeal of right.

However, MCR 7.203(A)(1) limits an appeal of right "from an order described in MCR 7.202(6)(a)(iii)-(v)" to that "portion of the order with respect to which there is an appeal of right."

---

was not cooperative during therapeutic parenting time, leading the court to order Harhold to pay for sessions with which she interfered.

MCR 7.202(6)(a)(iii) specifically pertains to a postjudgment order granting or denying a motion to change legal or physical custody or domicile. The appointment of the family therapist amounts to a condition of parenting time. Accordingly, Cornelius is not wrong that Harhold should have sought leave to appeal this issue. As this appeal is otherwise properly before us and in the interests of judicial expediency, we will consider Harhold's challenge on the merits.

The challenged portion of the court's order states: "Once the family therapy is established and the family therapist recommends unsupervised parenting time to the [GAL], then supervised parenting time with Dr. Pruneau [the therapeutic parenting-time provider] shall end." But this provision does not stand alone. The court also ordered:

> The family therapist shall make recommendations to the [GAL] who will then file a report with the recommendation with this Court. Recommendations shall include but are not limited to additional services for the parties or the minor children; possible expansion of parenting time or reduction in parenting time if needed.

Reading these provisions together, it is clear the trial court did not delegate its judicial duty to the family therapist. Rather, the family therapist must make a recommendation to the GAL, who must then author a report for the trial court to share the recommendation. The trial court will then decide the issue.

We affirm.

/s/ Jane E. Markey
/s/ Stephen L. Borrello
/s/ Kristina Robinson Garrett