# STATE OF MICHIGAN

# COURT OF APPEALS

BROOKE TERESE HOLMES,

      Plaintiff-Appellant,

v

THOMAS JAMES HOLMES,

      Defendant-Appellee.

UNPUBLISHED
September 11, 2018

No. 341025
Kent Circuit Court
LC No. 15-000779-DM

Before: STEPHENS, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Plaintiff mother appeals the parties' Judgment of Divorce that granted defendant father sole legal custody and primary physical custody of the parties' minor children BH and NH. We reverse and remand.

## I. BACKGROUND

The parties married on August 21, 2010 in Kent County, Michigan. In September 2010, they moved to Billings, Montana after defendant accepted a managerial position. They lived with defendant's mother in Montana until she remarried and moved with her spouse to Idaho, leaving them as caretakers of the house. The parties' first child, BH, was born in Montana on May 28, 2012. The parties returned to Michigan on May 22, 2014. On September 2, 2014, the parties were involved in a verbal altercation that turned physical. Plaintiff alleged defendant pushed her and defendant alleged plaintiff fell as he blocked her attempts to remove BH from his arms. Plaintiff left the home two days later on September 4 with BH under the guise that she was having coffee with a friend. Plaintiff filed a complaint for divorce on January 27, 2015.[1] The parties' second child, NH, was born on April 1, 2015. Defendant received limited and inconsistent parenting time with both children until he motioned the court for a parenting time order. A contentious 23-day divorce trial began on January 22, 2016 and concluded on March 20, 2017. Each party blamed the other's controlling behavior for the ruin of the marriage. According to plaintiff, defendant was verbally and emotionally abusive and controlled her movements at home and in public. According to defendant, plaintiff began controlling his relationships with friends and family as early as their wedding, she was aggressive, vengeful, and

---

[1] Plaintiff initially filed for divorce on November 11, 2014, but that complaint was dismissed.

manipulated others into believing she was a victim. On August 24, 2017, the court rendered an opinion and order in which it determined that an established custodial environment existed with plaintiff. The opinion analyzed each of the 12 child custody factors listed in MCL 722.23 and based upon that analysis granted primary physical and legal custody to defendant. Of the 12 factors, the court found one in plaintiff's favor, four in defendant's favor, and seven neutral. We find error in the court's rulings on factors (b), (f), and (h). Because the court's custody decision was based on a sum total of the child custody factors, we remand the matter for a redetermination of custody.

## II. STANDARD OF REVIEW

Under the Child Custody Act, MCL 722.21 *et seq*., "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. In application, the trial court's "[f]indings of fact are to be reviewed under the 'great weight' standard, discretionary rulings are to be reviewed for 'abuse of discretion,' and questions of law for 'clear legal error.' " *Fletcher v Fletcher*, 447 Mich 871, 877; 526 NW2d 889 (1994). The court's decision as to whom to award custody is a discretionary ruling that we review for an abuse of discretion. *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). An abuse of discretion occurs in the child custody context when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. *Fletcher*, 447 Mich at 879-880. A " 'clear legal error' occurs when a court incorrectly chooses, interprets, or applies the law." *Dailey v Kloenhamer*, 291 Mich App 660, 665; 811 NW2d 501 (2011) (citation omitted).

## III. ANALYSIS

Before any decision as to the custody of a child is made, the court must determine whether an established custodial environment exists. *Mogle v Scriver*, 241 Mich App 192, 197; 614 NW2d 696 (2000). "The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). The trial court "shall not . . . issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c). Here, the trial court determined that an established custodial environment existed with plaintiff and defendant does not challenge that finding on appeal. Therefore, going forward, defendant had the burden of proving by clear and convincing evidence that modification of the established custodial environment was in the children's best interests.

"To determine the best interests of the children in child custody cases, a trial court must consider all the factors delineated in [MCL 722.23] applying the proper burden of proof." *Foskett v Foskett*, 247 Mich App 1, 9; 634 NW2d 363 (2001). A trial court's findings with regard to each factor "should be affirmed unless the evidence clearly preponderates in the opposite direction." *Berger*, 277 Mich App at 705. "This Court will defer to the trial court's credibility determinations, and the trial court has discretion to accord differing weight to the best-interest factors." *Id*.

MCL 722.23 cites 12 factors to be considered, evaluated, and determined by the court to decide a child's best interests.

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23].

In this case, the trial court weighed factors (a), (c), (e), (g), (i), (k), and (l) evenly. The trial court weighed factor (d) in plaintiff's favor, and factors (b), (f), (h), and (j) in defendant's favor. Plaintiff challenges the court's findings with respect to factors (b), (c), (f), (h), and (j) as being against the great weight of the evidence produced at trial. We agree with plaintiff in part, that the court's findings in respect to factors (b), (f) and (h) were against the great weight of the evidence.

Plaintiff argues that factor (b), MCL 722.23(b), should have been weighed evenly between the parties and that the court's cited concerns under this factor were misplaced and should have been applied rather to factor (j). We agree. In its' opinion, the court stated that the focus for this factor was on "each parents' ability to continue to foster emotional ties with the child in the future." It gave no case law supporting this interpretation. In support of finding this factor favored defendant, the court focused on the lack of any evidence that defendant was an alcoholic and in need of anger management, and on instances that showed plaintiff was rather the controlling spouse. The court pointed out that no witness had attested to defendant having a drinking problem or to his temperament including fits of rage. It noted that in 2013 after BH was born, plaintiff described defendant as her "leveler when there is something emotional" to defendant's sister and that plaintiff put a hole in the wall during her pregnancy with BH. The court determined that defendant was not a danger to either child because there was no exhibit produced from Children's Protective Services (CPS) declaring so. In turn, the court acknowledged plaintiff's testimony that defendant was demeaning, manipulative and "berated [her] for her grocery shopping habits." However, the court relied on: 1) plaintiff's reduction of the parties' wedding guest list; 2) not allowing her mother-in-law's dog to be in the Montana home; 3) supervising defendant's parenting time with BH; 4) not involving defendant in NH's birth; 5) changing defendant's parenting time with NH to supervised when he was late returning her; and 6) not involving defendant in decisions related to daycare and preschool, as instances of plaintiff's controlling behavior and for its decision that factor (b) favored defendant.

The court's finding that factor (b) favored defendant was against the great weight of the relevant evidence. In *Pierron*, we stated that the evidence relevant to factor (b) is whether "plaintiff and defendant were equally capable of providing love and affection for the minor children." *Pierron v Pierron*, 282 Mich App 222, 253; 765 NW2d 345 (2009). As expressed in *Wardell*, relevant considerations include testimony regarding the parties' love of their children, the children's affection toward them, and the suitability of their respective homes. *Wardell v Hincka*, 297 Mich App 127, 135; 822 NW2d 278, 283 (2012). In *MacIntyre*, we also found relevant whether "each party equally assisted the child with his schoolwork, hobbies, and religious education," and which party "was better able to provide guidance." *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 454; 705 NW2d 144 (2005). Thus, there is no case support that this factor addresses the future. The evidence relied on by the court did not demonstrate that plaintiff lacked the present capacity and disposition to love and guide the children, nor that this factor favored defendant. The overwhelming evidence produced at trial showed that plaintiff was bonded to both children and they to her. Witnesses described plaintiff's interactions with BH and NH as affectionate and as plaintiff being able to comfort and redirect both children. Even the defendant who frequently disparaged the plaintiff acknowledged that the children were close and loving with their mother. Even assuming plaintiff was the more controlling spouse, there was no evidence that plaintiff's controlling behavior affected her capacity and disposition to love and guide the children. Cf. *Wright v Wright*, 279 Mich App 291, 301; 761 NW2d 443 (2008). The court misapplied the law and based its factor (b) decision on evidence that was relevant to factor (j).

Plaintiff next argues that the court's decision as to factor (c), MCL 722.23(c), was against the great weight of the evidence and should have been found in her favor[2] because she was the only party with a continuous income[3] and defendant refused to vaccinate the children.

In *Berger*, this Court explained that,

Factor c does not contemplate which party earns more money; it is intended to evaluate the parties' capacity and disposition to provide for the children's material and medical needs. Thus, this factor looks to the future, not to which party earned more money at the time of trial, or which party historically has been the family's main source of income. [*Berger*, 277 Mich App at 712.]

The trial court found that this factor was neutral because both parties were employed throughout the marriage and no party had argued that the children suffered any serious consequence for failure of the other party to provide for the children's needs. The court's decision was not against the great weight of the evidence. Defendant and plaintiff testified that defendant worked for Matheson and Heartland Payment Systems while in Montana. At the time of trial, defendant was living from savings, looking for work that would allow him the greatest amount of time with the children, and had recently taken steps to be a substitute teacher. Plaintiff testified to working at JC Penney and to operating in-home daycare and jewelry businesses while in Montana. At the time of trial, plaintiff testified she was employed at her church. Both parties received government assistance for food and health insurance. The court did not address plaintiff's argument related to defendant's refusal to provide the children with vaccinations however, it "need not include consideration of every piece of evidence entered and argument raised by the parties." *MacIntyre*, 267 Mich App at 452. Moreover, the defendant's testimony supported that he did not refuse the children medical care, but rather wanted to discuss which vaccines were required and which were recommended because according to defendant, he and plaintiff agreed during their marriage that they would not give their children every vaccine recommended. The court's decision to find this factor neutral between the parties was not against the great weight of the evidence when the evidence presented substantiated that each party had the capacity and disposition to provide for the children's needs.

We agree with plaintiff that the court's finding that the moral fitness factor, MCL 722.23(f), favored defendant was against the great weight of the evidence, in part because the court did not focus on how the parties' moral fitness affected the children. In analyzing this factor, the trial court acknowledged that each party called the other a liar and produced witnesses that claimed the other was untruthful, which resulted in a "he-said she-said" situation. The court noted two instances however that caused it to find factor (f) in defendant's favor, first that plaintiff stole a wedding picture from defendant's sister Becky Reno, and second that defendant

---

[2] Plaintiff concedes in her reply brief that the standard for evaluating her argument for factor (c) is great weight and not clearly erroneous as argued in her principle brief.

[3] Plaintiff's statement of the issue presented also states that defendant was voluntarily unemployed to the children's detriment, but plaintiff does not make this argument in the body of her argument.

established the "truth police" with BH "[i]n part because plaintiff controlled the child." We address the latter first, because the court noted the CPS failure to prosecute was the deciding issue.

Defendant testified that after CPS allegations were lodged against him, he made BH, then barely three years' old, "an honorary member of the truth police." He told BH that when BH heard something that was wrong, to not be afraid to stand up and say "that's wrong." Defendant explained that he created the truth police force to give BH the power to voice an opinion against what was not true.

"[Q]uestionable conduct is relevant to factor (f) only if it is a type of conduct that necessarily has a significant influence on how one will function as a parent." *Fletcher*, 447 Mich at 887. Under factor (f), the court must "look to the parent-child relationship and the effect that the conduct at issue will have on that relationship." *Id*. The focus "is not who is the morally superior adult, but rather the parties' relative fitness to provide for their child, given the moral disposition of each party as demonstrated by individual conduct." *Berger*, 277 Mich App at 712-713 (citation and quotation marks omitted).

The court stated "the more important reason" for finding factor (f) favored defendant was the instance involving the "truth police." The court's citation to defendant's creation of the "truth police" however was only relevant to mentioning that defendant was investigated and cleared by CPS. The court acknowledged that the CPS report was not produced, but determined the lack of production inconsequential when alleged parts of the report were testified to without objection. The implication of the court's reliance on CPS as an independent factor was that plaintiff lodged two baseless CPS complaints against defendant. However, the court specifically precluded information about who filed the reports. On April 29, 2016, after defense counsel asked the plaintiff whether she filed a CPS complaint, the court ruled, "You can't ask that question." Later, it noted, "She can't —I-won't let her answer it and you can't ask it." On June 16 2016, despite the court's order, defense counsel again asked plaintiff if she reported a certain emergency visit for NH to CPS, and she answered, "No." Defendant attempted to testify about an e-mail he claimed to have read that was authored by the plaintiff and sent to CPS, but an objection was lodged. At best, the record contains evidence that defendant claimed that he was accused of being a pedophile in some communication to CPS between plaintiff and CPS. However, we cannot determine if that was the basis of the complaint or a comment allegedly made in the course of a CPS investigation without the CPS report's admission. MRE 1002.[4] The court held that, "What is clear is that defendant was cleared by them at least once, maybe twice." The court's conclusion that CPS did not proceed with any petitions to the court was not disputed by the parties. However, neither the inference that plaintiff was the source of a baseless report to CPS, or that any information provided in the course of a CPS investigation by the plaintiff was false and a material factor in the decision not to take further action, is supported by this record. The court's determination of defendant's moral fitness citing, "CPS is the independent factor here" was erroneous.

---

[4] "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." MRE 1002.

For the purposes of this opinion, we do not find error in the court's determination that plaintiff took a picture and possibly money from her sister-in-law Reno. Reno testified that plaintiff had access to her home when she was not there at a time contemporaneous to a certain picture and money going missing. She also testified that, at the least, the missing picture was later discovered in plaintiff's possession. While plaintiff denied stealing money or photographs from Reno, the court had adequate evidence upon which to conclude otherwise. There was however, no evidence or analysis from the court that plaintiff's stealing of a wedding photo influenced her functioning as a parent. The court's finding that factor (f) favored defendant was against the great weight of the evidence and clear legal error.

We also agree with plaintiff's contention that the court's decision to weigh factor (h), MCL 722.23(h), in defendant's favor was against the great weight of the evidence. We note that plaintiff failed to address this factor in her principal brief. The court's decision was based on its finding that plaintiff had not enrolled BH in preschool. There was no evidence that BH had a particularized need for preschool enrollment due to any mental or physical abilities or disabilities. Defendant's witness Alexander Manker, a former teacher, offered opinion testimony that plaintiff's decision not to enroll BH in preschool was detrimental to BH's overall education and his success in kindergarten. Defendant testified that he asked plaintiff multiple times about sending BH to preschool and that plaintiff initially, ignored the issue, but when pressed, told defendant it was too expensive. In opposition, plaintiff argues in her reply brief that BH attended preschool at the daycare to which he was sent on Wednesdays when plaintiff worked. Regardless of whether there was a significant educational component at the institution, BH's attendance was only one day a week. Nevertheless, while there is no doubt that pre-kindergarten education affords children some advantages, there was no testimony upon which the court could conclude that BH had a particularized need for preschool. Further, the state of Michigan does not require enrollment in pre-kindergarten educational programs. The court's decision finding factor (h) in defendant's favor was against the great weight of the evidence. This factor should not have favored either party.

Plaintiff lastly contends that the court's decision in favor of defendant as to factor (j), MCL 722.23(j), "the willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents," was against the great weight of the evidence. We disagree. The record was replete with evidence of the parties' rancorous attempts to co-parent. Significantly, plaintiff admitted imposing a supervised visitation on the defendant sua sponte. The court's analysis under factor (b) listed conduct that demonstrated unwillingness on the part of plaintiff to foster the relationship of the children with their father. In the same analysis, the trial court noted plaintiff's attempts to prevent the children from waving goodbye to defendant, "trouble at doctor's appointments" and attempts to limit defendant's contact with the children. There was also significant testimony that defendant "made statements that indicated a very low opinion of Plaintiff." The defendant called plaintiff many names during trial and in e-mails produced at trial. There was also testimony from the defendant that another person could serve the children's mothering needs other than the plaintiff. There was no evidence however, that defendant's name-calling inhibited plaintiff's relationship with the children. The testimony from defendant at trial was that he believed it important for the children to have a relationship with their mother. Plaintiff also testified that it was important for the children to have a relationship with their father, however, her actions of limiting defendant's parenting time illustrated otherwise. The e-

mails produced by the parties at trial evidenced that plaintiff was not willing to grant defendant additional parenting time, in other words negotiate with defendant, absent a court order. Testimony supports that plaintiff made multiple unilateral decisions about the children's care and well-being without consulting defendant, as well as denied defendant's requests for information about the children. The court's decision as to this factor was not against the great weight of the evidence.

The trial court's findings regarding factors (b), (f), and (h) were against the great weight of the evidence. Based on the evidence, these factors should have been neutral. Remand is appropriate, because the trial court's decision was premised on the sum total of the best interest factors. On remand, the trial court "is to review the entire question of custody" and consider again, "all the statutory factors." *Ireland v Smith*, 451 Mich 457, 468-469; 547 NW2d 686 (1996).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola