*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MOTA, Minors.

FOR PUBLICATION
October 22, 2020
9:05 a.m.

No. 351830
Lenawee Circuit Court
Family Division
LC No. 19-000253-NA

Before: BOONSTRA, P.J., and MARKEY and HOOD, JJ.

MARKEY, J.

Respondent father appeals by right the trial court's order terminating his parental rights to his three minor children pursuant to MCL 712A.19b(3)(b)(*i*) (a sibling of the children suffered sexual abuse caused by the parent's act), (j) (reasonable likelihood that children will be harmed if returned to parent's home), and (k)(*ix*) (parent sexually abused a sibling of the children and there is a reasonable likelihood of harm to the children if returned to parent's care). On appeal, respondent presents three arguments. First, he contends that the trial court erred by combining the adjudication trial with the initial disposition hearing, resulting in one indistinguishable court proceeding. Second, respondent argues that his attorney was ineffective for failing to object to the trial court's merging the adjudicative and dispositional phases of the case. Third, respondent maintains that the trial court erred by finding that it was in the children's best interests to terminate respondent's parental rights. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In February 2019, the petitioner, the Department of Health and Human Services (DHHS), filed a petition to remove the minor children from respondent's care and to terminate his parental rights. Although the minor children's mother was listed as a respondent in the petition, she was subsequently dismissed from the case absent any adjudication relative to her parental rights. In the petition, the DHHS alleged that respondent had sexually abused the minor children's half-sister, LP, by taking photographs of her anal and vaginal areas while LP pretended to be asleep. The petition asserted that jurisdiction was proper under MCL 712A.2(b)(1) and (2), that grounds for termination existed under MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ix*), and that termination of respondent's parental rights was in the children's best interests. The trial court authorized the petition and placed the children with their mother.

In June 2019, the DHHS moved under MCR 3.972(C)(2) to admit statements LP had made to her maternal grandmother, Cynthia Johnson, regarding the sexual abuse. The DHHS argued that the statements LP made to Johnson satisfied the criteria for admissibility set forth in MCR 3.972(C)(2).[1] On October 24, 2019, the trial court conducted a tender-years' hearing under MCR 3.972(C)(2)(a). At the hearing, Johnson testified that LP was seven years old when she made statements to Johnson concerning the acts respondent allegedly committed. When Johnson was playfully tickling LP, she told Johnson that respondent had entered LP's bedroom the night before while LP was in bed. According to LP, respondent pulled down LP's pants and underwear and touched her buttocks. LP also told Johnson that respondent spread LP's buttocks apart, that he had a flashlight or a phone light that was turned on at the time, and that she believed that respondent took photographs of her. Johnson testified that LP indicated that she was scared and did not know what to do, so she pretended to be asleep even when respondent turned her over. LP appeared nervous to Johnson, but Johnson believed that this was because LP did not know how Johnson would react to LP's assertions. Johnson noted that respondent had helped raise LP since before she was age one and that LP referred to respondent as "dada."

Kevin Sellers, who was employed by the DHHS, testified that he conducted a forensic interview of LP regarding her allegations of sexual abuse by respondent. LP informed Sellers that she was sleeping on her back when a light woke her up. LP told Sellers that she knew that it was respondent in her room with a light and that she pretended to be sleeping. According to LP, respondent pulled LP's pants and underwear down with the light still on. LP explained to Sellers that respondent turned LP over onto her stomach and moved the light down to her buttocks area. As she had told Johnson, LP indicated to Sellers her belief that respondent was taking photographs of her. Sellers testified that LP informed him that respondent spread her buttocks apart and "toward her . . . vaginal area."

At the conclusion of the testimony by Johnson and Sellers and following arguments by the parties on the DHHS's tender-years' motion, the trial court granted the motion, allowing for the

---

[1] MCR 3.972(C) provides, in relevant part, as follows:

(2) Any statement made by a child under 10 years of age . . . regarding an act of . . . sexual abuse . . . may be admitted into evidence through the testimony of a person who heard the child make the statement as provided in this subrule.

(a) A statement describing such conduct may be admitted regardless of whether the child is available to testify or not, and is substantive evidence of the act or omission if the court has found, in a hearing held before trial, that the circumstances surrounding the giving of the statement provide adequate indicia of trustworthiness. This statement may be received by the court in lieu of or in addition to the child's testimony.

(b) If the child has testified, a statement denying such conduct may be used for impeachment purposes as permitted by the rules of evidence.

admission of LP's statements into evidence at trial. The court found that LP was under 10 years of age when the statements were made, that the statements were sufficiently trustworthy, that LP made the statements spontaneously, and that LP had behaved appropriately under the circumstances. Accordingly, the criteria in MCR 3.972(C)(2) were satisfied. The trial court further concluded that LP's statements were made to someone she trusted, that subsequent assertions LP made to Sellers were consistent with those made to Johnson, that there was nothing to suggest LP had a motive to lie about the incident, and that the terminology used by LP to describe the events was consistent with the language one would expect of a child her age.

After the trial court granted the DHHS's motion and a half-hour recess, the court commenced a combined adjudication trial and dispositional hearing. Rachelle VanAken, a Special Assault Nurse Examiner (SANE), testified that she physically examined LP around the time of the disclosure of sexual abuse. VanAken prepared a report concerning her examination, which included various statements LP made to VanAken. The DHHS sought to admit the SANE report into evidence; respondent objected on the basis that the report contained information and directions that were supposedly given to the "patient" but were actually provided to Johnson. VanAken explained that some information and directions normally given to a patient are often given to the patient's caregiver when the patient is a minor. The trial court overruled respondent's objection.

When VanAken physically examined LP, she observed some bruises on LP's shins, which LP thought had been caused by bumping into something. VanAken testified that there was white discharge between LP's labia and hymen, a tear where LP's labia come together posteriorly, and a small abrasion on the outside of LP's anus. LP reported to VanAken that her buttocks hurt "a little." VanAken opined that the injuries were "highly suggestive" of sexual abuse. VanAken explained:

> Due to the fact that she was saying that he spread her apart and depending on the force that was used or the pressure that was put on you can actually tear that tissue by spreading the areas around the vaginal area if you use your hands to spread that open you can actually tear that tissue and the same thing can kind of happen with the anal area. Any force that is used to spread open the anal area can cause injuries.

According to VanAken, LP told her that respondent checked LP's buttocks with a flashlight while she pretended to sleep. VanAken believed that LP's version of events was consistent with her physical injuries. Respondent raised a hearsay objection, which was overruled by the trial court on the basis of the medical treatment or diagnosis exception to hearsay, MRE 803(4). LP also informed VanAken about a history of domestic violence in the family home, describing several events, including one where respondent choked the children's mother, which resulted in intervention by Johnson and her husband and a call to the police.

Johnson was once again called to testify about the statements LP made to her. Johnson's testimony was consistent with the testimony she gave during the tender-years' hearing, with a few clarifications. On the basis of her discussion with LP, Johnson was unsure whether respondent had successfully turned LP over onto her back or if he had only attempted to do so. In addition, LP told Johnson that respondent did not put anything inside of her and had only touched her buttocks. Johnson did not believe that the minor children were bonded with respondent because

he rarely engaged in activities with the children. Whenever Johnson saw them together, the children were playing by themselves while respondent played video games.

Jill Heilmann, a children's protective services worker, testified to her belief that the minor children were likely to be harmed if returned to respondent's care. She was concerned about respondent's having access to the children considering his sexual abuse of LP. Heilmann also noted that respondent had provided very little support for the minor children. Heilmann further expressed concern regarding the alleged domestic violence, but the trial court struck this testimony when respondent objected on the ground that it constituted hearsay. In Heilmann's opinion, the minor children had a heightened need for stability and permanency due to their ages—they were all under six years old. To the best of Heilmann's knowledge, respondent had neither been arrested nor charged for the alleged sexual abuse of LP.

Heilmann testified that before proceedings were commenced, the minor children had lived with their four older siblings, their mother, and respondent in a rental unit. At some point between the initiation of this case and trial, the family was evicted from the rental home and the children and their mother had moved in with Johnson and Johnson's husband. According to Heilmann, the children were all bonded with each other.

The children's mother testified that respondent moved out of their home after LP made the allegations against respondent. She also touched on the alleged history of domestic violence, claiming that while respondent had not physically assaulted her, he would stand in her way and prevent her from leaving a room. The children heard some of their arguments although the children's mother did not intend to argue in front of them. According to the children's mother, respondent sometimes yelled at the children and spanked them for disciplinary purposes but never in a way that she deemed inappropriate. She never saw respondent physically mistreat any of the minor children. Because of the age of the youngest child, the children's mother did not believe that the child and respondent had bonded. But the other two children talked about respondent often and said that they missed him. In the mother's view, one child was having behavioral issues caused or exacerbated by respondent's absence. When the child was angry with the children's mother, the child would cry and ask for respondent.

After the proofs were submitted, there was a power outage, so the court adjourned the matter for the day. A week later the case was reconvened, and the trial court issued its ruling from the bench. The trial court found a basis to exercise jurisdiction under MCL 712A.2(b)(1) and (2), and it terminated respondent's parental rights to the minor children. The petition had alleged grounds for termination under MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ix*), and while the court's ruling was a bit vague, it appeared that the court found that all three provisions had been proven by clear and convincing evidence. The primary premise of the court's decision was its finding that there was "sexual abuse in this case." The trial court concluded that the evidence even revealed some penetration.

In finding a basis to exercise jurisdiction and to terminate respondent's parental rights, the trial court determined that the minor children would be at a substantial risk of harm by respondent for two reasons related to respondent's sexual abuse of LP. First, there was a direct risk of respondent's engaging in similar conduct with his children and, second, there was a risk to the children's mental, physical, and emotional well-being in being raised by someone who would do

such things. The trial court also found that termination was in the minor children's best interests because they needed permanency, stability, and an environment safe from potential victimization. Furthermore, the court determined that the bond between the children and respondent, while significant, actually posed a danger to the children because they could be abused or learn negative behaviors and a lack of impulse control. The trial court also noted that the children were safe with their mother, who reported LP's allegations immediately and continued to provide a good environment for the children. Respondent appeals by right.

## II. ANALYSIS

### A. ADJUDICATION AND DISPOSITION IN A SINGLE COMBINED PROCEEDING

Respondent argues that the trial court erred when it combined the adjudication trial and the initial disposition hearing, resulting in a single indistinguishable proceeding. Respondent contends that "the record does not reflect that a separate hearing was conducted by the trial court to determine whether or not there was a preponderance of . . . evidence" to establish jurisdiction. Respondent further maintains that the SANE report prepared by VanAken was inadmissible because the medical treatment or diagnosis exception to hearsay, MRE 803(4), did not apply. Respondent similarly posits that some of VanAken's testimony was based on hearsay statements LP made to VanAken and that LP herself stated that there was no penetration. And, according to respondent, there is no indication in the record whether the trial court used the SANE report and VanAken's testimony for purposes of the adjudication or instead used the evidence to decide the issue of termination as part of the dispositional phase of the case. Respondent also argues that the trial court made no factual findings and thus it is unclear whether the court properly adjudicated respondent with legally admissible evidence.

#### 1. STANDARD OF REVIEW

"[F]amily division procedure under the court rules . . . [is] reviewed de novo." *In re AMAC*, 269 Mich App 533, 536; 711 NW2d 426 (2006). Respondent, however, did not preserve his argument below with an objection to the procedure employed by the trial court. Therefore, our review is for plain error affecting respondent's substantial rights, and to justify reversal the plain error must also seriously affect the integrity, fairness, or public reputation of the judicial proceedings. *In re Ferranti*, 504 Mich 1, 30; 934 NW2d 610 (2019).

#### 2. INTERPRETATION OF THE COURT RULES

"When called upon to interpret and apply a court rule, this Court applies the principles that govern statutory interpretation." *Haliw v Sterling Hts*, 471 Mich 700, 704-705; 691 NW2d 753 (2005); see also *Fleet Business Credit, LLC v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 591; 735 NW2d 644 (2007). "Court rules should be interpreted to effect the intent of the drafter, the Michigan Supreme Court." *Fleet Business*, 274 Mich App at 591. Clear and unambiguous language contained in a court rule must be given its plain meaning and is enforced as written. *Id*. We may consult a dictionary to determine the plain meaning of an undefined term used in the court rules. *Wardell v Hincka*, 297 Mich App 127, 132; 822 NW2d 278 (2012).

## 3. DISCUSSION

The DHHS, following an investigation, may petition a court to take jurisdiction over a child. *In re Ferranti*, 504 Mich at 15, citing MCR 3.961(A). The petition must contain essential facts that if proven would permit the court to assume and exercise jurisdiction over the child. MCR 3.961(B)(3); MCL 712A.2(b); *In re Ferranti*, 504 Mich at 15. If a petition is authorized, the adjudication phase of the proceedings takes place, and the "question at adjudication is whether the court can exercise jurisdiction over the child (and the respondents-parents) under MCL 712A.2(b) so that it can enter dispositional orders, including an order terminating parental rights." *In re Ferranti*, 504 Mich at 15.

In *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014), the Michigan Supreme Court explained:

> A brief review of the court rules and statutes governing child protective proceedings is helpful here. The juvenile code, MCL 712A.1 *et seq.*, establishes procedures by which the state can exercise its parens patriae authority over minors. These procedures are reflected in Subchapter 3.900 of the Michigan Court Rules. In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase. Generally, a court determines whether it can take jurisdiction over the child in the first place during the adjudicative phase. Once the court has jurisdiction, it determines during the dispositional phase what course of action will ensure the child's safety and well-being. [Citations omitted.]

If a trial is held regarding adjudication, the respondent is entitled to a determination of the facts by the jury or judge; the rules of evidence apply, and the burden of proof is a preponderance of the evidence. *In re AMAC*, 269 Mich App at 536. "The dispositional phase involves a determination of what action, if any, will be taken on behalf of the child." *Id.* at 537. "Unlike the adjudicative [trial], at the initial dispositional hearing the respondent is not entitled to a jury determination of the facts and, generally, the Michigan Rules of Evidence do not apply, so all relevant and material evidence is admissible." *Id.*, citing MCR 3.911, MCR 3.973(E), and MCR 3.977(A)(3). "Termination of parental rights may be ordered at the initial dispositional hearing." *In re AMAC*, 269 Mich App at 537, citing MCR 3.977(E) and MCL 712A.19b(4).[2] "If permanent termination of parental rights is sought, the petitioner bears the burden of proving the statutory basis for termination by clear and convincing evidence." *In re AMAC*, 269 Mich App at 537; see also MCL 712A.19b(3).

MCR 3.973 addresses procedural and substantive aspects of dispositional hearings, and Subrule (A) provides:

> A dispositional hearing is conducted to determine what measures the court will take with respect to a child properly within its jurisdiction and, when applicable, against any adult, *once the court has determined following trial*, plea of

---

[2] "If a petition to terminate the parental rights to a child is filed, the court may enter an order terminating parental rights . . . at the initial dispositional hearing." MCL 712A.19b(4).

admission, or plea of no contest that one or more of the statutory grounds alleged in the petition are true. [Emphasis added.]

The language of MCR 3.973(A) indicates that a dispositional hearing is to be conducted following or after a trial in which jurisdiction is established pursuant to statute. MCR 3.973(B) provides that "[u]nless the dispositional hearing is held immediately after the trial, notice of hearing may be given by scheduling it on the record in the presence of the parties or in accordance with MCR 3.920." This language plainly envisions the dispositional hearing taking place "after" the adjudication trial, whether immediately thereafter or later. MCR 3.973(C) provides, in relevant part, that "[t]he *interval*, if any, *between* the trial and the dispositional hearing is within the discretion of the court." (Emphasis added.) An "interval" is "a space of time between events or states." *Merriam-Webster's Collegiate Dictionary* (11th ed). And even if there is no space of time "between" a trial and a dispositional hearing, which is permissible under MCR 3.973(C), the sequence of events nonetheless entails an adjudication trial followed by a dispositional hearing.

MCR 3.977 addresses the termination of parental rights in the dispositional phase of the proceedings, and Subrule (E) provides, in pertinent part, as follows:

> The court shall order termination of the parental rights of a respondent at the initial dispositional hearing held pursuant to MCR 3.973, and shall order that additional efforts for reunification of the child with the respondent shall not be made, if
>
> > (1) the original, or amended, petition contains a request for termination;
> >
> > (2) *at the trial or plea proceedings*, the trier of fact finds by a preponderance of the evidence that one or more of the grounds for assumption of jurisdiction over the child under MCL 712A.2(b) have been established;
> >
> > (3) *at the initial disposition hearing*, the court finds on the basis of clear and convincing legally admissible evidence that had been introduced at the trial or plea proceedings, or that is introduced at the dispositional hearing, that one or more facts alleged in the petition . . . .

The language of MCR 3.977(E) clearly envisions or contemplates two separate proceedings—a trial or plea relative to adjudication *and* a dispositional hearing for purposes of termination. MCR 3.977(E)(3) indicates that at an initial disposition hearing, a court can terminate parental rights on the basis of legally admissible evidence that had previously been introduced at the adjudication trial or legally admissible evidence presented for the first time at the dispositional hearing.[3] Thus, MCR 3.977(E)(3) does allow a court, at the initial disposition hearing, to rely on

---

[3] In *In re Utrera*, 281 Mich App 1, 17-18; 761 NW2d 253 (2008), this Court noted that the "petitioner sought termination of respondent's parental rights at the initial disposition in the amended petition, and MCR 3.977(E) provides that clear and convincing, *legally admissible evidence* was required." (Emphasis added.) Thus, while generally the "Michigan Rules of

evidence admitted at the adjudication trial to support termination. In that sense, MCR 3.977(E)(3) creates some murkiness with respect to the line of demarcation between an adjudication trial and an initial dispositional hearing.

Reading MCR 3.973(A), (B), and (C) in conjunction with MCR 3.977(E)(3), we conclude that the following described process honors the intent of the court rules promulgated by our Supreme Court and applies when an adjudication trial is conducted and the DHHS requests termination at the initial dispositional hearing under circumstances such as those posed in this case. First, an adjudication trial is to be conducted with the court allowing the introduction of legally admissible evidence that is relevant to the exercise of jurisdiction under MCL 712A.2(b). At the conclusion of the adjudication trial, the court, in a bench trial, is to determine whether the DHHS established by a preponderance of the evidence a basis for jurisdiction under MCL 712A.2(b). If jurisdiction is not established, the proceeding is, of course, concluded. If the trial court finds that it has jurisdiction, the dispositional hearing in which termination is sought may immediately be commenced. At the termination hearing, the trial court, in rendering its termination decision under MCL 712A.19b, may take into consideration any evidence that had been properly introduced and admitted at the adjudication trial, MCR 3.977(E), along with any additional relevant and material evidence that is received by the court at the termination hearing, MCR 3.977(H)(2).[4]

---

Evidence do not apply at the initial dispositional hearing," MCR 3.973(E)(1), when termination is sought at the initial dispositional hearing, legally admissible evidence is required, MCR 3.977(E)(3). When termination of parental rights is not being sought at the initial dispositional hearing nor on the basis of circumstances new or different from those that led the court to originally take jurisdiction, "[t]he Michigan Rules of Evidence do not apply, other than those with respect to privileges . . . ." MCR 3.977(H)(2).

[4] To the extent that the DHHS argues that this Court's opinion in *In re AMAC* supports the trial court's handling of the adjudication and dispositional phases of the case, we disagree. Indeed, *In re AMAC* fully supports our ruling, as reflected in the following passage:

> In this case, there was an adjudicative hearing that concluded with the trial court rendering its written opinion and order terminating respondent's parental rights without a dispositional hearing either immediately following the trial or by proper notice after the trial. We construe the plain and ordinary language of MCR 3.973(A) as requiring a dispositional hearing to be "conducted to determine what measures the court will take with respect to a child properly within its jurisdiction. . . ." Clearly, the dispositional hearing is to be held after the adjudicative phase of the proceeding in which it was determined that the child was properly within the court's jurisdiction. See MCR 3.973(A). And the dispositional hearing must be held either immediately following the adjudicative hearing or after proper notice. See 3.973(B). Therefore, the trial court erred here in not affording respondent her right to a dispositional hearing. [*In re AMAC*, 269 Mich App at 538 (citations omitted; ellipses in original).]

In this case, with respect to the presentation of evidence, the trial court did not separate the adjudication trial from the dispositional hearing, and it then issued rulings in regard to jurisdiction and termination after all of the proofs were submitted. The trial court, therefore, failed to proceed as required by the court rules. But on plain error review, we cannot conclude that respondent's substantial rights were affected or that the integrity, fairness, or public reputation of the proceedings were seriously affected by the court's procedural errors. With regard to respondent's argument that the SANE report and VanAken's testimony touching on LP's assertions should not have been admitted into evidence and that it is impossible to tell whether the court used this evidence for adjudication or disposition, we note the record reflects that to the extent that the court relied on the report and testimony, it was for purposes of *both* adjudication and termination. Moreover, the statements LP made to VanAken were "for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment." MRE 803(4). Respondent fails to develop any pertinent argument to the contrary.

With respect to respondent's contention that the trial court made no factual findings, leaving it unclear whether the court properly adjudicated respondent with legally admissible evidence, we find that argument lacks merit. The trial court, relying on legally admissible evidence, expressly found that respondent sexually abused LP, that there was penetration, and that there was a substantial risk of harm to the minor children in light of the sexual assault committed by respondent against LP. Moreover, these findings were used to support the exercise of jurisdiction and the termination of parental rights.

In sum, we hold that the trial court committed procedural errors in conducting the adjudicative and dispositional phases of the case; however, respondent has failed to show that the errors affected his substantial rights or seriously affected the fairness, integrity, or public reputation of the judicial proceedings.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent argues that his trial attorney was ineffective for failing to object to the trial court's merger of the adjudicatory and dispositional phases of the case.

---

Although a dispositional hearing can be conducted immediately after an adjudicative trial, the two cannot be converged such that there is no distinction. *In re Thompson*, 318 Mich App 375, 379; 897 NW2d 758 (2016).

## 1. STANDARD OF REVIEW

Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

## 2. DISCUSSION

"The principles applicable to claims of ineffective assistance of counsel in the arena of criminal law also apply by analogy in child protective proceedings; therefore, it must be shown that (1) counsel's performance was deficient, falling below an objective standard of reasonableness, and that (2) the deficient performance prejudiced the respondent." *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). To demonstrate prejudice, a party must show the existence of a reasonable probability that, but for counsel's error, the results of the proceeding would have been different, and a reasonable probability is one that is sufficient to undermine confidence in the outcome. *People v Carbin,* 463 Mich 590, 600; 623 NW2d 884 (2001).

In light of our holding regarding the proper procedures under the court rules to be used in conducting an adjudicative trial and an initial dispositional hearing in which termination is sought, we conclude that trial counsel's performance in failing to object to the process used in this case fell below an objective standard of reasonableness. Nevertheless, respondent simply cannot and does not establish the requisite prejudice. We are confident that the results of the adjudication and disposition would have been exactly the same had the court followed the proper procedures. Accordingly, reversal is unwarranted.

## C. CHILDREN'S BEST INTERESTS

Finally, respondent argues that the trial court clearly erred by finding that termination of his parental rights was in the children's best interests. Respondent contends that the children's placement with their mother weighed heavily against termination and that the trial court failed to consider that the children were placed with a relative—their mother. He also maintains that the trial court failed to consider that the children had a good relationship and strong bond with their father. Respondent claims that terminating his parental rights was traumatic for the children. Respondent emphasizes that there was no evidence that he harmed, neglected, or abused his minor children. He notes that there was only one incident of abuse, that two of his children are boys, so there should have been no concern that he would sexually abuse them, and that respondent provided for the basic needs of the children.

## 1. TERMINATION FRAMEWORK AND STANDARDS OF REVIEW

If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate

a respondent's parental rights to that child. MCL 712A.19b(3) and (5); MCR 3.977(H)(3); *In re Beck*, 488 Mich 6, 10-11; 793 NW2d 562 (2010); *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013); *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).[5] "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); see also MCR 3.977(K). "A finding . . . is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed[.]" *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). When applying the clear error standard in parental termination cases "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989); see also MCR 2.613(C).

## 2. DISCUSSION

With respect to a child's best interests, we place our focus on the child rather than the parent. *In re Moss*, 301 Mich App at 87. In assessing a child's best interests, a trial court may consider such factors as a "child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that "the child could be returned to [the] parents' home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

Furthermore, "[a] child's placement with relatives is a factor that the trial court is required to consider" when making its best-interests determination, *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015), and "a child's placement with relatives weighs against termination," *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). "Relative" is defined in MCL 712A.13a(1)(j) as:

> an individual who is at least 18 years of age and related to the child by blood, marriage, or adoption, as grandparent, great-grandparent, great-great-grandparent, aunt or uncle, great-aunt or great-uncle, great-great-aunt or great-great-uncle, sibling, stepsibling, nephew or niece, first cousin or first cousin once removed, and the spouse of any of the above, even after the marriage has ended by death or divorce.

---

[5] Respondent does not argue that the trial court erred by finding that the grounds for termination were established by clear and convincing evidence.

Thus, a child's biological parent is not that child's "relative" for purposes of the statute. This proposition was recognized by this Court in *In re Schadler*, 315 Mich App 406, 412-413; 890 NW2d 676 (2016), wherein the panel observed:

> Nevertheless, respondent argues that the trial court entirely failed to give any weight to BS's placement with his biological mother. However, the trial court specifically acknowledged the "week on / week off custodial arrangement between the father and mother" in the process of determining that termination was in BS's best interests. Moreover, MCL 712A.13a(1)(j) defines "relative," and biological mother is not included in the definition. See MCL 712A.13a(1)(j). Therefore, because BS's biological mother was not a "relative" for purposes of MCL 712A.19a, the trial court was not required to consider that relative placement. Respondent's argument is misplaced.

Accordingly, we reject respondent's similar argument in this case.

In finding that termination was in the minor children's best interests, the trial court acknowledged that respondent and the minor children were bonded and that termination would not be an easy transition. But the court also recognized that the children needed stability and permanence, as well as "to grow up in an environment where they are safe and secure[] from . . . potential victimization." The trial court opined that the children's mother was providing a safe and nurturing environment for the children.

Although there was only evidence of one act of sexual abuse, it was an especially egregious violation of a child who had looked to respondent for care and protection as a father figure. We cannot conclude that the trial court clearly erred by finding that this single act of sexual abuse that resulted in physical injuries revealed a side of respondent that posed a serious danger to his minor children. With respect to the purported bond between respondent and his children, there was also evidence of a bond between LP and respondent, yet that did not prevent respondent from sexually exploiting and abusing her. The doctrine of anticipatory neglect provides that how a parent treats one child is probative of how that parent may treat other children. *In re LaFrance Minors*, 306 Mich App 713, 730; 858 NW2d 143 (2014). Although the doctrine is not a perfect fit in this case because LP is not respondent's child, respondent had been raising LP for a number of years as if she were his daughter. Furthermore, there is nothing in the record to support respondent's pseudo-psychological argument that he is not a danger to young boys—abuse is abuse. Finally, the fact that respondent provided some limited assistance to his children did not suffice to overcome the danger that respondent poses to his children. In sum, the trial court did not clearly err by finding that termination of respondent's parental rights was in the best interests of the children.

## III. CONCLUSION

We hold that the trial court committed procedural errors in conducting the adjudicative and dispositional phases of the case; however, respondent has failed to show that the errors affected his substantial rights or seriously affected the fairness, integrity, or public reputation of the judicial proceedings. We also conclude that trial counsel's performance in failing to object to the process used in this case fell below an objective standard of reasonableness, but respondent fails to

establish the requisite prejudice.  Finally, we hold that the trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests.

We affirm.

/s/ Jane E. Markey
/s/ Mark T. Boonstra
/s/ Karen M. Fort Hood