*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SOLANGE SPINELLI DE CARVALHO SANTOS,

Plaintiff-Appellant,

v

BRUNO VINICIUS DE SOUZA SANTOS,

Defendant-Appellee.

UNPUBLISHED
June 10, 2026
9:26 AM

No. 378026
Oakland Circuit Court
LC No. 2024-528141-DC

Before: BAZZI, P.J., and RICK and MALDONADO, JJ.

PER CURIAM.

Plaintiff, Solange Spinelli de Carvalho Santos, and defendant, Bruno Vinicius de Souza Santos, divorced in California in 2022, and they relocated to Michigan with their minor daughter, MCS. Plaintiff appeals as of right the trial court's October 14, 2025 order changing the custody of MCS from joint legal and physical custody to defendant having sole legal custody and primary physical custody. We affirm.

## I. BACKGROUND

The parties and their daughter are originally from Brazil. Shortly after the family settled in California for work opportunities in 2018, the parties separated and were granted a divorce by a California court in 2022. The parties had joint legal and physical custody, although plaintiff was MCS's primary caretaker. Plaintiff relocated to Michigan around that time, and defendant also moved to Michigan to maintain his relationship with MCS.

In approximately April 2024, a complaint was filed with Children's Protective Services (CPS), alleging that MCS was neglected while in defendant's custody by being left alone in a car or at home. Around this time, plaintiff also applied for and was granted an ex parte personal protection order (PPO) from the trial court, which alleged that defendant had, on multiple occasions, assaulted, stalked, and threatened to kill plaintiff. Plaintiff pursued a postjudgment action against defendant in California, relying on both the CPS report and the PPO obtained against defendant in Michigan. However, the CPS investigation was closed out very quickly, with no action taken against defendant. Similarly, while on vacation in Brazil in 2021, Plaintiff filed a case against defendant that was dismissed in 2023, with no action taken against defendant.

-1-

Plaintiff also alleged that she had obtained a restraining order against defendant in Brazil, which she later admitted was not true.

After plaintiff was unsuccessful in restricting defendant's parenting time through the California court system, she filed the California judgment of divorce with the trial court for enforcement of the custody decision in Michigan. Plaintiff also initiated proceedings to suspend defendant's parenting time and petitioned to change MCS's domicile to Ohio, after plaintiff's employer transferred her there. The parties reached an agreement that allowed plaintiff to move to Ohio with MCS and entitled defendant to parenting time every other weekend and daily telephone calls with MCS. The parties also agreed to a mutual restraining order, and the PPO was dismissed.

In September 2024, MCS's therapist, Alejandra Medina, filed a CPS complaint, alleging that defendant engaged in sexually inappropriate behavior with MCS. The basis of the complaint was that Medina believed that MCS masturbated during therapy sessions and played with dolls in a sexual way. Plaintiff also discovered a drawing by MCS that plaintiff believed showed that MCS had observed a naked male with an erect penis and a hand on the penis. MCS also wrote a note to plaintiff, thanking plaintiff for saving MCS, which plaintiff believed was because she rescued MCS from defendant. Both CPS and the local police department investigated defendant for criminal sexual conduct involving MCS, but after MCS was forensically interviewed and did not disclose any abusive conduct, the investigation was dismissed. Plaintiff refused to accept the results of the investigation.

In the period between the CPS investigations, defendant's parenting time was limited. He believed that plaintiff attempted to alienate MCS from him by continuing to pursue baseless allegations against him involving both MCS and plaintiff. In November 2024, plaintiff applied for and obtained a PPO against defendant in Montgomery County, Ohio. She also refused to produce MCS for visits with defendant, which she argued was on the advice of law-enforcement officers. She maintained that she was only protecting MCS.

In January 2025, plaintiff was found in contempt of court, both civilly and criminally, for her failure to appear in court and for violations of multiple court orders related to defendant's parenting time. The trial court also vacated the agreement to change MCS's domicile to Ohio and restored MCS's domicile to Michigan and defendant's home. Defendant was granted temporary sole legal and primary physical custody of MCS. The trial court also ordered that a referee conduct an evidentiary hearing on a permanent modification of custody. After the evidentiary hearing in April, May, and June 2025, the referee recommended that defendant be granted sole legal custody and primary physical custody and plaintiff be granted parenting time. The trial court adopted the referee's findings in its order, which plaintiff appeals by right.[1]

---

[1] We reject defendant's argument that this Court lacks jurisdiction to address plaintiff's issue involving parenting time. Defendant is correct that plaintiff's appeal as of right is from the postjudgment order changing custody, MCR 7.202(6)(a)(iii), which is a final order, MCR 7.203(A)(1). Defendant, however, incorrectly argues that because parenting time decisions

## II. STANDARDS OF REVIEW

"In a child custody dispute, 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Pennington v Pennington*, 329 Mich App 562, 569-570; 944 NW2d 131 (2019), quoting MCL 722.28.

We apply the abuse-of-discretion standard to the trial court's discretionary rulings, such as custody decisions, and we review questions of law for clear legal error. *Bofysil v Bofysil*, 332 Mich App 232, 242; 956 NW2d 544 (2020) . "A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id*. (quotation marks and citation omitted). "An abuse of discretion, for purposes of a child custody determination, exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Butler v Simmons-Butler*, 308 Mich App 195, 201; 863 NW2d 677 (2014).

In addition, "[t]he great weight of the evidence standard applies to all findings of fact" and "[a] trial court's findings regarding each best interest factor." *Bofysil*, 332 Mich App at 242, 245 (quotation marks and citation omitted). "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Pennington*, 329 Mich App at 570. Moreover, we defer to the trial court's credibility determinations and recognize that the trial court has discretion regarding the weight to afford different factors. *McRoberts v Ferguson*, 322 Mich App 125, 134; 910 NW2d 721 (2017).

## III. ANALYSIS

### A. ESTABLISHED CUSTODIAL ENVIRONMENT

Plaintiff argues that the trial court erred by determining that MCS had an established custodial environment with defendant and not with plaintiff. We disagree.

The Child Custody Act, MCL 722.21 *et seq.*, "provides a comprehensive scheme for resolving child-custody disputes, including specific procedural requirements and factual findings under MCL 722.27(1)(c) that must be made before a trial court may modify a child's established custodial environment." *Kuebler v Kuebler*, 346 Mich App 633, 667-668; 13 NW3d 339 (2023) (citations omitted). "The purposes of the act are to promote the best interests of the child and to

---

are not identified in MCR 7.202(6)(a) as final orders that may be appealed as of right, and MCR 7.203(A)(1) limits an appeal filed under MCR 7.202(6)(a)(iii) to only the portion of the order for which there is an appeal as of right, plaintiff was required to file a separate application for leave to appeal to properly raise parenting time as an issue. We believe that this Court has jurisdiction to review parenting time decisions made in relationship to a change of custody in an appeal as of right, as occurred in this case. However, even if plaintiff was required to file a separate leave application, we treat the claim of appeal as an application, in relevant part, and grant it in the interest of judicial economy. *Wardell v Hincka*, 297 Mich App 127, 133 n 1; 822 NW2d 278 (2012).

provide a stable environment for children that is free of unwarranted custody changes." *Pierron v Pierron*, 282 Mich App 222, 243; 765 NW2d 345 (2009) (citations omitted), aff'd 486 Mich 81 (2010).

MCL 722.27(1)(c) allows a trial court to "modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances," if the modification is in the child's best interests. However, the trial court "shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of child." MCL 722.27(1)(c). Accordingly, "[w]hether an established custodial environment exists is a question of fact that the trial court must address before it determines the child's best interests." *Butler*, 308 Mich App at 202.

An established custodial environment exists "if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). We have also described an established custodial environment as

> one of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child. It is both a physical and a psychological environment that fosters a relationship between custodian and child and is marked by security, stability, and permanence. [*Berger v Berger*, 277 Mich App 700, 706; 747 NW2d 336 (2008), citing *Baker v Baker*, 411 Mich 567, 579-580; 309 NW3d 532 (1981).]

In determining whether a custodial environment exists, "the age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered." MCL 722.27(1)(c). The custodial environment should be viewed from the child's perspective, not the parents' perspective. *Sabatine v Sabatine*, 513 Mich 276, 286; 15 NW3d 204 (2024).

"A custodial environment can be established as a result of a temporary custody order, in violation of a custody order, or in the absence of a custody order." *Berger*, 277 Mich App at 707, citing *Hayes v Hayes*, 209 Mich App 385, 388; 532 NW2d 190 (1995). Further, "[t]he existence of a temporary custody order does not preclude a finding that an established custodial environment exists with the noncustodian or that an established custodial environment does not exist with the custodian." *Berger*, 277 Mich App at 706-707. An established custodial environment can exist with both parents if the child looks to both the mother and father for "guidance, discipline, the necessities of life, and parental comfort." *Id*. at 707. See also, *Sabatine*, 513 Mich at 286 (assuming, without deciding, that "a child can have an established custodial environment with both parents").

In the present case, the trial court adopted the referee's finding that MCS only had an established custodial environment with defendant. The referee acknowledged that before January 2025, and despite an order of joint custody and equal parenting time, MCS spent the majority of her time with plaintiff. However, MCS had resided with defendant since January 2025, when the trial court granted defendant temporary sole legal and physical custody in light of

plaintiff's "lengthy efforts to (1) defy court orders regarding parenting time and (2) attempt to circumvent the jurisdiction and authority of [the] court by filing unfounded petitions in foreign jurisdictions." The referee found that plaintiff's actions had "caused significant unrest and chaos for the minor child" instead of providing the stability and reliability expected of a custodial environment. In contrast, the referee found that defendant had been the primary provider of parental comfort, guidance, and discipline well before receiving custody of MCS and in the several months following the order granting him temporary custody. Thus, the referee found that an established custodial environment existed with defendant and not with plaintiff.

Plaintiff contends that the trial court's finding of an established custodial environment with defendant and not with plaintiff was against the great weight of the evidence as the trial court's finding amounted to the "complete erasure of the first eight years of MCS's life," in which plaintiff "dutifully served as the default parent and primary caretaker." Further, plaintiff argues that the trial court's finding that an established custodial environment existed with defendant after having temporary custody for only six months was contrary to applicable caselaw. We disagree.

Contrary to plaintiff's arguments, the trial court did not err by focusing on the custodial environment that existed at the time the court made its custody determination. See *Sabatine*, 513 Mich at 287. The environment that MCS shared with the parties before their separation and the environment in place after their separation but before January 2025 no longer existed. In fact, this environment was destroyed by plaintiff. The parties divorced in 2022, and plaintiff primarily served as MCS's caretaker until the trial court granted defendant temporary sole custody in January 2025. However, the period after the divorce was marked with incredible instability caused by plaintiff. Plaintiff prompted the relocations from California to Michigan and then to Ohio, in addition to purposefully disrupting the agreed upon parenting time schedule. And, at the time the trial court was asked to permanently change custody in October 2025, plaintiff was no longer a regular caretaker for MCS. These were the circumstances in which the trial court had to determine what established custodial environment existed, not a custodial environment that no longer existed. See *id*. No one, not even defendant, disputed that there were strong emotional ties between plaintiff and MCS, but there were intervening circumstances that destroyed the custodial environment between MCS and plaintiff.

MCL 722.27(1)(c) states that an established custodial environment is created over "an appreciable time." Although plaintiff emphasizes that defendant had sole custody for only six months at the time the referee made his recommendation, plaintiff cites no case that adopts a per se rule on how much time must pass to establish a custodial environment. Rather, the cases on which plaintiff relies demonstrate the highly fact dependent nature of this inquiry.

By the time the trial court made its determination on permanent custody in October 2025, MCS had resided with defendant for approximately 10 months. We conclude, as the trial court did, that this was an appreciable time in which an established custodial environment could be, and was, created with defendant. In addition, the record was clear that, at that time, defendant was the only parent offering MCS the type of care that qualified as an established custodial environment, and MCS no longer looked to plaintiff for guidance and stability. From the record, it is apparent that plaintiff's focus was on preventing a relationship between MCS and defendant and not on providing care or guidance for MCS. Further, although defendant obtained sole custody of MCS on the basis of a temporary order, this does not preclude a finding that an established custodial

-5-

environment existed with defendant or that a custodial environment did not exist with plaintiff. See *Berger*, 277 Mich App at 706-707.

Plaintiff makes no other meaningful argument as to why the trial court's finding that a custodial environment existed with defendant and not with plaintiff was against the great weight of the evidence. Plaintiff focuses on her prior role in MCS's life and does not discuss the present facts and circumstances on which the trial court based its decision. As discussed, those circumstances included instability caused by plaintiff's actions and a significant period of time in which MCS was in defendant's care and doing well. Accordingly, we are not persuaded that the trial court's findings were against the great weight of the evidence or that the evidence clearly preponderates in the opposite direction warranting our intervention. See *Pennington*, 329 Mich App at 569-570.

## B. BEST-INTEREST FACTORS

Plaintiff has failed to show that the trial court's findings on the best-interest factors were against the great weight of the evidence.

In order to change custody, the trial court was required to review the best-interest factors in MCL 722.23:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

The trial court found that factors (a), (e), (g), (h), and (k), were equal between the parties, while factors (b), (c), (d), (f), (j), and (*l*), favored defendant. The trial court also weighed MCS's preference, after interviewing her, but the court did not discuss MCS's preference on the record. No factors were found to solely favor plaintiff.

Plaintiff challenges factors (b), (c), (f), and (j), on the grounds that the trial court punished her with regard to these factors because plaintiff was found to have violated the court's orders and found in contempt of court. Plaintiff claims that the trial court did not base its rulings on what was in MCS's best interests but instead used the custody decision to punish plaintiff for her contemptuous behavior.

Plaintiff is correct that a change of custody is required to focus on the child's best interests and the factors set forth in MCL 722.23. However, it is not error for the court to consider whether a parent's conduct resulted in violating court orders or contempt proceedings when weighing the best-interest factors. See *McRoberts*, 322 Mich App at 139-140. Plaintiff cites cases in which courts erred by relying on minor allegations of contempt to find proper cause or a change of circumstances to support revisiting the best-interest factors and change custody, such as *Mitchell v Mitchell*, 296 Mich App 513; 823 NW2d 153 (2012). In *Mitchell*, 296 Mich App at 519, this Court explained that it previously held that a trial court could not use custody as a means of punishing the defendant for not following the court's orders where the trial court also did not follow the procedures in MCL 722.27(1) and did not consider the best-interest factors, MCL 722.23. This case is distinguishable from *Mitchell*, because the trial court followed the procedures in MCL 722.27(1) and properly applied the best-interest factors.

The trial court's findings discussed plaintiff's violation of court orders but also directly related plaintiff's actions to MCS's best interests. Where the trial court cited plaintiff's contempt and violations of court orders, it linked those actions to the direct impact on MCS, which was to interfere with MCS's relationship with defendant. The record reflects that when plaintiff was MCS's primary caretaker, plaintiff attempted to thwart defendant's parenting time and alienate him from MCS. On this basis, it was not error for the trial court to cite plaintiff's contempt conviction and violations of court orders when evaluating the best-interest factors, including the

moral fitness of the parent and the parent's willingness to facilitate a relationship with the other parent. The record shows that the trial court was focused on how plaintiff's conduct affected MCS, and the court's findings do not suggest that it was punishing plaintiff for her conduct by denying her custody. Plaintiff has not shown error by the trial court on this basis.

Plaintiff also argues that the trial court failed to properly consider MCS's therapist testimony and erred by finding that plaintiff's allegations against defendant were baseless or in some way fabricated by plaintiff. We disagree.

While the trial court was required to provide findings and conclusions on each of the best-interest factors, it was not obligated to address every piece of evidence produced or argument made, so long as the trial court's findings and conclusions can be reviewed by this Court. *MacIntyre v MacIntyre*, 267 Mich App 449, 451-452; 705 NW2d 144 (2005). Nonetheless, although the trial court did not expressly mention the therapist's testimony, the trial court discussed the results of the sexual-assault investigation in its opinion when analyzing factor (f), the parties' moral fitness. The trial court rejected the therapist's claim that defendant had engaged in conduct that could be interpreted as sexual abuse or exposure. The trial court explained that plaintiff's interpretation of MCS's drawing was "highly speculative and inconsistent" with MCS's own explanation of her drawing. The facts showed that MCS was experiencing problems, but nothing supported plaintiff's allegations that defendant was responsible for physical or sexual abuse of MCS. To the extent that plaintiff pursued sexual abuse charges against defendant and refused to produce MCS for parenting time, the facts showed that even after the investigation was completed and there was no reason to keep defendant away from MCS, plaintiff refused to accept the results of the investigation. After the investigation into the therapist's report concluded, plaintiff should have accepted the results and tried to focus on providing proper care, guidance, and help to MCS, which included encouraging a relationship with defendant.

We therefore conclude that plaintiff has failed to show error with the trial court's findings regarding the best-interest factors.

## C. CUSTODY DETERMINATION

Plaintiff argues that the trial court abused its discretion by granting defendant sole legal and physical custody. But, in doing so plaintiff simply summarily repeats her arguments regarding why the trial court erred by finding that an established custodial environment existed only with defendant and in analyzing the best-interest factors. We decline to address these arguments again when they have been thoroughly discussed. Moreover, to the extent that plaintiff believes that the trial court should have considered awarding the parties joint legal and physical custody, it is clear, based on the testimony produced at the evidentiary hearing, that the parties were unable to cooperate or generally agree on the important decisions that affected MCS's welfare, to award joint custody. See MCL 722.26a(1). Therefore, we are not persuaded that the trial court committed a palpable abuse of discretion in its custody determination in this case.

## D. PARENTING TIME

Plaintiff also argues that the amount of parenting time she was allowed was not supported by the evidence. "Orders concerning parenting time must be affirmed on appeal unless the trial

court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Luna v Regnier*, 326 Mich App 173, 179; 930 NW2d 410 (2018) (quotation marks and citation omitted).

Parenting time must also be determined on the basis of the child's best interests, and it is presumed that it is in the child's best interests to have a strong relationship with both parents. MCL 722.27a(1). Accordingly, "parenting time shall be granted to a parent in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time." MCL 722.27a(1).

MCL 722.27a(7) sets forth the factors a court may consider when deciding a parenting time schedule:

> (7) The court may consider the following factors when determining the frequency, duration, and type of parenting time to be granted:
>
> (a) The existence of any special circumstances or needs of the child.
>
> (b) Whether the child is a nursing child less than 6 months of age, or less than 1 year of age if the child receives substantial nutrition through nursing.
>
> (c) The reasonable likelihood of abuse or neglect of the child during parenting time.
>
> (d) The reasonable likelihood of abuse of a parent resulting from the exercise of parenting time.
>
> (e) The inconvenience to, and burdensome impact or effect on, the child of traveling for purposes of parenting time.
>
> (f) Whether a parent can reasonably be expected to exercise parenting time in accordance with the court order.
>
> (g) Whether a parent has frequently failed to exercise reasonable parenting time.
>
> (h) The threatened or actual detention of the child with the intent to retain or conceal the child from the other parent or from a third person who has legal custody. A custodial parent's temporary residence with the child in a domestic violence shelter shall not be construed as evidence of the custodial parent's intent to retain or conceal the child from the other parent.
>
> (i) Any other relevant factors.

The trial court analyzed the above factors and concluded that the referee's recommendations for parenting time should be adopted. Plaintiff was allowed parenting time on every Wednesday, from 4:00 p.m. to 8:00 p.m., and on every other weekend, from 12:00 p.m. on

Saturday to 12:00 p.m. on Sunday. After 90 days, if plaintiff was in full compliance, the weekend visits could be expanded.

On the facts of this case, it is apparent that the trial court put limits and restrictions on plaintiff's parenting time because of her past behavior, including ignoring court orders, and the fear that plaintiff could leave the country with MCS, given plaintiff's issues with employment and her roots in Brazil. Additionally, although plaintiff obtained a student visa, it is only good for four years. It is thus not clear if plaintiff will be able to find employment that will permit her to exercise additional parenting time in Michigan. Because there was an underlying concern that plaintiff could leave the country with MCS and plaintiff had a history of violating court orders, as well as lying to the court, the trial court properly limited parenting time to one evening a week and one weekend day on alternating weekends. The trial court also appropriately required that plaintiff check in through an application that included Global Positioning System monitoring, so that plaintiff's and MCS's whereabouts could be verified at any time. Limited parenting time was justified in this case until plaintiff demonstrated a willingness to obey court orders, cooperate with defendant, and act in MCS's best interests. The trial court did not err by limiting the amount of time plaintiff could spend with MCS.

Affirmed.

/s/ Mariam Saad Bazzi
/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado